IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Raytheon Aircraft Company,**

                **Plaintiff,**

v.                                                    **Case No. 05-2328-JWL**

**United States of America,**

                **Defendant.**

## MEMORANDUM AND ORDER

Plaintiff Raytheon Aircraft Company filed suit against the United States of America under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA) seeking cost recovery or contribution from the Army Corps of Engineers as a liable party. Plaintiff also seeks a declaratory judgment that the provisions of CERCLA governing the unilateral administrative order regime are unconstitutional under the Due Process Clause of the Fifth Amendment.

This matter is presently before the court on the United States' motion to dismiss or, in the alternative, for summary judgment (doc. #13). As explained below, the motion is granted in part and denied in part. Specifically, the motion is granted with respect to Raytheon's claim for cost recovery pursuant to CERCLA section 107(a), but the court would permit Raytheon to amend its complaint to assert that it is not a potentially responsible person if it intends to so assert, as only parties who are not themselves potentially responsible persons may assert claims for cost recovery under section 107(a) under Tenth Circuit case law; the motion is granted with respect to Raytheon's claims for contribution under CERCLA section 113(f)

(except to the extent Raytheon seeks to recover some portion of the costs incurred for work performed pursuant to two AOCs); the motion is granted with respect to Raytheon's claims for contribution under federal common law; and the motion is granted with respect to Raytheon's due process claims.   The motion is otherwise denied and the court finds that Raytheon has an implied right to contribution under CERCLA section 107(a) such that it may pursue a claim for contribution against the Army Corps of Engineers.

## I.      Factual Background

The facts presented here are taken from Raytheon's complaint and, for purposes of the United States' motion, the court accepts these facts as true.   From 1942 through 1946, the United States Army constructed and the Army Air Corps operated the Herington Army Airfield (HAAF).   During this time period, the Army Air Corps processed bombing crews and aircraft as part of the World War II war effort.   The Army Air Corps also performed maintenance on B-29 aircraft, including engine repair, engine replacement, spark plug degreasing, hydraulic repair and repainting.   In conducting such maintenance, the Army Air Corps utilized volatile organic compounds and chlorinated degreasing solvents, including trichloroethylene (TCE). The Army Air Corps' civilian and military employees spilled, poured and released these solvents, including TCE, onto the ground at HAAF and into drains that discharged directly to the environment.

In 1948, the United States quitclaimed HAAF to the City of Herington, Kansas; thereafter, the City of Herington renamed the site the Tri-County Public Airport ("TCPA") and

leased portions of it to commercial tenants, including Beech Aircraft Company ("Beech"), the predecessor to Raytheon Aircraft Company ("Raytheon").   Beginning in 1950, Beech leased parts of the site from the City and, until 1960, used portions of its leasehold as a military aircraft refurbishing facility and for various manufacturing purposes, including the production of wing fuel dispersing tanks and military aircraft starter generators.

Between 1993 and 1997, the Environmental Protection Agency (EPA) conducted investigations at TCPA to determine whether the Army Air Corps' activities during World War II had caused soil or groundwater contamination.   The EPA detected TCE and other contaminants at TCPA.   In October 1997, the EPA tested private groundwater wells in the area around TCPA and detected TCE in some of the groundwater samples.   That same month, the EPA contacted Raytheon about contamination at the site and Raytheon's possible status as a potentially responsible person ("PRP").   In 1998, the EPA began an expanded site investigation/remedial investigation at TCPA to clarify that the release of TCE had occurred and to determine the extent of contamination.

In response to a request for information issued by the EPA to the United States Army Corps of Engineers, the Army Corps of Engineers summarily denied that it had polluted TCPA and apparently denied using TCE at the site.   Thereafter, in March 2000, the EPA issued an Administrative Order on Consent (AOC) pursuant to CERCLA section 122(d).   In this AOC, the EPA found that Raytheon may be liable under section 107(b) of CERCLA and ordered Raytheon to conduct a removal action to address TCE and TCE degradation products at TCPA. The AOC further required Raytheon to pay for 100 percent of the work and 100 percent

reimbursement of oversight costs incurred by the EPA.   Raytheon alleges that it has incurred response costs for work performed under the AOC, including the EPA's oversight costs.   The Army Corps of Engineers has not contributed to these costs.   In November 2000, Raytheon signed an Administrative Order on Consent with the Kansas Department of Health and Environment ("KDHE") to perform a remedial investigation/feasibility study of TCPA. Raytheon alleges that it has incurred response costs for work performed under the KDHE AOC and that the Army Corps of Engineers has not contributed to these costs.

In September 2004, the EPA, pursuant to CERCLA section 106, issued a unilateral administrative order (UAO) to Raytheon and the City of Herington, in which it identified Raytheon as a PRP and directed Raytheon to excavate and properly dispose of TCE-contaminated soils from an insular location at TCPA where, according to Raytheon, the Army Corps of Engineers operated a TCE-vapor degreaser.   The UAO requires Raytheon to perform work that may cost Raytheon, at a minimum, $3,500,000.00.   Raytheon alleges that the work required by the UAO involves a separate and distinct area of the site from the area where Beech had its wing tank manufacturing operation (an operation that, as conceded by Raytheon, utilized a TCE-degreaser).   Nonetheless, Raytheon agreed to perform the work required in the UAO.

Raytheon now seeks to recover from the Army Corps of Engineers all or some portion of the costs that Raytheon has incurred performing work required by the two AOCs and in response to the UAO.

## II.    The CERCLA Cost Recovery and Contribution Framework

4

Congress enacted CERCLA "to facilitate the expeditious cleanup of environmental contamination caused by hazardous waste releases," *Sierra Club v. Seaboard Farms Inc.*, 387 F.3d 1167, 1172 (10th Cir. 2004) (citing *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1533 (10th Cir. 1992)), and to establish a "financing mechanism to abate and control the vast problems associated with abandoned and inactive hazardous waste disposal sites." *Young v. United States*, 394 F.3d 858, (10th Cir. 2005) (quoting *Public Serv. Co. of Colo. v. Gates Rubber Co.*, 175 F.3d 1177, 1181 (10th Cir. 1999)). Thus, "the twin aims of CERCLA are to cleanup hazardous waste sites and impose the costs of such cleanup on parties responsible for the contamination." *Id.* (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)). Under the statutory scheme, the "former . . . must precede the latter." *Id.* (citing *Gussack Realty Co. v. Xerox Corp.*, 224 F.3d 85, 91 (2d Cir. 2000)).

CERCLA encourages "private parties to assume the financial responsibility of cleanup by allowing them to seek recovery from others." *Id.* (quoting *FMC Corp. v. Aero Indus., Inc.*, 998 F.2d 842, 847 (10th Cir. 1993)). Specifically, CERCLA "provides two types of legal actions by which parties can recoup some or all of their costs associated with hazardous waste cleanup: cost recovery actions under § 107(a), 42 U.S.C. § 9607(a), and contribution actions under § 113(f), 42 U.S.C. § 9613(f)." *Id.* (quoting *United States v. Colorado & E. R.R. Co.*, 50 F.3d 1530, 1535 (10th Cir.1995)); *accord Cooper Indus., Inc. v. Aviall Servs., Inc.*, 543 U.S. 157, 163 (2004) ("CERCLA provide[s] for a right to cost recovery in certain circumstances, § 107(a), and separate rights to contribution in other circumstances, §§ 113(f)(1), 113(f)(3)(B)").

Under section 107(a), the government may recover its response costs from four classes of potentially responsible persons (PRPs).  *Cooper Indus.*, 543 U.S. at 161 (citing § 107(a)(4)(A)).   Section 107(a) further provides that PRPs shall be liable for "any other necessary costs of response incurred by any other person consistent with the national contingency plan."   *Id.* (quoting § 107(a)(4)(B)).   Section 107(a)(4)(B), then, allows private parties to recoup costs from other private parties in certain circumstances.  *See id.* at 163 n.3. Section 113(f) was added to CERCLA with the enactment of the Superfund Amendments and Reauthorization Act (SARA) of 1986 to expressly recognize a right of contribution.  *Colorado & E. R.R.*, 50 F.3d at 1536.[1]   Pursuant to section 113(f)(1), "any person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title."   SARA also created a separate express right of contribution for "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement."  § 113(f)(3)(B).

---

[1]Prior to SARA, CERCLA "made no express provision for contribution actions among parties held jointly and severally liable under its section 107 liability scheme" and courts had simply recognized an implicit federal right to contribution under CERCLA. *County Line Inv. Co. v. Tinney*, 933 F.2d 1508, 1515-16 (10th Cir. 1991). Some of these courts found a contribution right implied in section 107 itself, *see, e.g., Wehner v. Syntex Agribusiness, Inc.*, 616 F. Supp. 27, 31 (E.D. Mo. 1985), and others found a contribution right arising under federal common law, *see, e.g., Colorado v. ASARCO, Inc.*, 608 F. Supp. 1484, 1486 (D. Colo. 1985).

### III.     Raytheon's Cost Recovery and Contribution Claims

Raytheon is seeking to recover from the Army Corps of Engineers all or some portion of the costs incurred performing work required by the two AOCs and in response to the UAO. Raytheon, in its complaint, has asserted a claim for cost recovery and/or contribution under section 107(a), section 113(f) and federal common law.   In its motion to dismiss, the United States essentially urges that Raytheon is precluded from recovering from any other PRPs any costs incurred by Raytheon in complying with the UAO.[2]   According to the United States, Raytheon may not seek cost recovery under section 107(a) because it is a PRP.   The United States further contends that Raytheon may not pursue a claim for contribution under section 107(a) (regardless of whether the claim is based on the express language of section 107(a) or based on a right to contribution implied in section 107(a) or under federal common law) because any claim for contribution necessarily must be brought pursuant to section 113(f). With respect to Raytheon's claims under section 113(f), however, the United States asserts that Raytheon is precluded from asserting such claims because a UAO is not a civil action for purposes of section 113(f)(1) and Raytheon has not resolved its liability in settlement for purposes of section 113(f)(3)(B).

As explained below, the court concludes that Raytheon cannot state a claim for contribution under section 113(f) with respect to costs incurred complying with the UAO for

---

[2]The United States concedes for purposes of its motion that Raytheon has stated a claim for contribution under section 113(f)(3)(B) with respect to costs incurred for work performed pursuant to the AOCs.

the reasons asserted by the United States.  The court further concludes that Raytheon, having not alleged in its complaint that it is not a PRP, cannot state a claim for cost recovery under section 107(a).   With respect to Raytheon's claims for contribution under section 107(a) or federal common law, the court concludes that Raytheon, in the unique circumstances of this case where it is precluded from seeking recovery under section 113(f), does have an implied right to contribution under section 107(a) despite its status as a PRP and, thus, it can pursue a claim for contribution against the Army Corps of Engineers.  As will be explained, the court finds this implied right to contribution grounded in Tenth Circuit case law, both in terms of the Circuit's opinions discussing the implied right to contribution and the legislative history of section 113(f) and the Circuit's pre-*Cooper Industries* cases concerning the scope of section 113(f).

A.      *Standard*[3]

        The court will dismiss a cause of action for failure to state a claim only when "it appears beyond a doubt that the plaintiff can prove no set of facts in support of [its] claims which would entitle [it] to relief," *Aspenwood Investment Co. v. Martinez*, 355 F.3d 1256, 1259 (10th Cir. 2004) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)), or when an issue of law is dispositive.  *Neitzke v. Williams*, 490 U.S. 319, 326 (1989).  The court accepts as true all

        [3]The United States' motion to dismiss is filed alternatively as a motion for partial summary judgment.  To the extent the motion is directed at Raytheon's claims for cost recovery and contribution, however, the motion is based solely on Federal Rule of Civil Procedure 12(b)(6) and neither party relies on any materials beyond Raytheon's complaint.

well-pleaded facts, as distinguished from conclusory allegations, and all reasonable inferences from those facts are viewed in favor of the plaintiff. *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083, 1088 (10th Cir. 2003). The issue in resolving a motion such as this is "not whether [the] plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

B.      *Section 113(f)(1)*

In pertinent part, section 113(f)(1) provides that "[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a) of this title, during or following any civil action under section 9606 of this title or under section 9607(a) of this title." As the Supreme Court clearly held in *Cooper Industries v. Aviall Services, Inc.*, 543 U.S. 157 (2004), a private party who has not been sued under section 106 or section 107(a) may not obtain contribution under section 113(f)(1) from other liable parties. *Id*. at 160-61. In other words, contribution claims under section 113(f)(1) may only be sought during or following a civil action under section 106 or section 107(a). While the Supreme Court expressly declined to consider whether a section 106 administrative order would qualify as a "civil action" for purposes of section 113(f)(1), *see id.* at 168 n.5, this court believes that the Tenth Circuit would conclude that it does not.

Significantly, in *Sun Company v. Browning-Ferris, Inc.*, 124 F.3d 1187 (10th Cir. 1997), the Tenth Circuit, analyzing the claims of plaintiffs who, like Raytheon, had incurred

9

costs in response to a unilateral administrative order under section 106, noted that the plaintiffs had "never been defendants in a civil action" under sections 106 or 107(a) and repeatedly distinguished the procedural posture in which the plaintiffs found themselves as compared to those PRPs against whom the government has brought a civil action under sections 106 or 107(a). *Id*. at 1190-92. Thus, while the precise issue of whether a unilateral administrative order constituted a civil action was not before the Circuit, the Circuit's opinion, albeit dicta, gives a clear indication that the Circuit would conclude that a unilateral administrative order does not constitute a civil action for purposes of section 113(f)(1).

Other cases, while not binding on the court, are persuasive on the issue. In *Pharmacia Corp. v. Clayton Chem. Acquisition LLC*, 382 F. Supp. 2d 1079 (S.D. Ill. 2005), the district court expressly held that a unilateral administrative order does not constitute a civil action for purposes of section 113(f)(1). *Id*. at 1086-87. In so concluding, the court engaged in a thorough analysis of the natural meaning of the phrase "civil action" as compared to the natural meaning of the phrase "administrative order" and further found that the distinction between a civil action and an administrative order was supported by the statutory framework of section 113 as well as the text of section 106. *See id.* at 1087-88; *accord Blue Tee Corp. v. ASARCO, Inc.*, 2005 WL 1532955, at *3-4 (W.D. Mo. 2005) (unilateral administrative order does not constitute a civil action for purposes of section 113(f)(1)).

Raytheon does not direct the court to any cases concluding that a unilateral administrative order or other administrative order constitutes a civil action for purposes of section 113(f)(1). Rather, Raytheon contends that the Tenth Circuit, in *Sun Company*,

10

recognized that a unilateral administrative order was sufficiently coercive to trigger a contribution claim under section 113(f)(1). Raytheon is correct that the Circuit characterized the plaintiffs' claim in *Sun Company* as a claim for contribution under section 113(f)(1); the Circuit, however, did not do so under the premise that the unilateral administrative order issued by the EPA was a civil action for purposes of section 113(f)(1). As noted above, the Circuit expressly distinguished a unilateral administrative order from a civil action on several occasions throughout the opinion. Nonetheless, the Circuit, like many courts prior to the Supreme Court's decision in *Cooper Industries*, apparently[4] read section 113(f)(1) to permit contribution claims regardless of whether there was or had been a civil action. *See Pharmacia Corp.*, 382 F. Supp. 2d at 1086-87 (explaining that, prior to *Cooper Industries*, many courts concluded that a party could bring a contribution claim under section 113(f)(1) regardless of whether a civil action had been filed). To the extent, then, that *Sun Company* suggests that a party may seek contribution under section 113(f)(1) even in the absence of a civil action under section 106 or 107(a), that suggestion has been superseded by *Cooper Industries.*

For the foregoing reasons, then, the court concludes that Raytheon may not bring a claim for contribution under section 113(f)(1).

C.      *Section 113(f)(3)(B)*

---

[4]The court uses the word "apparently" because the Circuit did not explain the theory under which the plaintiffs could pursue contribution under section 113(f); that issue was not relevant to the court's analysis because the defendant in *Sun Company* did not challenge the plaintiffs' ability to seek contribution under section 113(f).

The court turns, then, to consider whether Raytheon may seek contribution for costs incurred responding to the UAO pursuant to section 113(f)(3)(B).  This section provides that "[a] person who has resolved its liability to the United States or a State for some or all of a response action or for some or all of the costs of such action in an administrative or judicially approved settlement may seek contribution from any person who is not a party to a settlement in paragraph (2)."  In its complaint, Raytheon alleges that it has resolved its liability in administrative settlements as to its costs in performing work pursuant to the AOCs issued by the EPA in March 2000 and by the KDHE in November 2000.  The United States concedes, then, that Raytheon, at least for purposes of a 12(b)(6) motion, has stated a claim for contribution under section 113(f)(3)(B) with respect to those costs.  The United States, however, moves to dismiss Raytheon's claim for contribution concerning those costs incurred in responding to the UAO because, according to the United States, the UAO by definition is unilateral and, thus, does not constitute an administrative settlement for purposes of section 113(f)(3)(B).

Raytheon contends that section 113(f)(3)(B) permits it to seek contribution for all costs it has incurred with respect to a particular site if it has resolved its liability with respect to a portion of those costs.  In other words, Raytheon argues that it can pursue a claim for contribution under this section for costs incurred responding to the UAO because it has resolved its liability with respect to costs incurred complying with the AOCs.  The court rejects this argument and agrees with the United States that a proper reading of section 113(f)(3)(B) is one that limits a plaintiff's right to contribution to those response costs for

which it has resolved its liability in settlements with the United States or a State.   Stated another way, the right to contribution under section 113(f)(3)(B) is defined by the scope of the liability resolved.   *See Restatement (Third) of Torts* § 23 cmt. b ("A person seeking contribution must extinguish the liability of the person against whom contribution is sought for that portion of liability, either by settlement with the plaintiff or by satisfaction of judgment.").

This interpretation of section 113(f)(3)(B) is consistent with the statutory framework of section 113(f) in its entirety.   Section 113(f)(3)(B) provides a right to contribution against "any person who is not a party to a settlement referred to in paragraph (2)."   Section 113(f)(2), in turn, states that a "person who has resolved its liability to the United States or a State in an administrative or judicially approved settlement shall not be liable for claims for contribution *regarding matters addressed in the settlement*."   42 U.S.C. § 9613(f)(2) (emphasis added). In other words, "a party that has settled its liability under CERCLA may bring a CERCLA contribution action against a non-settling party and is also protected from any contribution claims made by others relative to the site that is the subject of the settlement."   *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc*., 2005 WL 1076117, *2, *7 (W.D.N.Y. May 3, 2005) (plaintiff could not maintain contribution action beyond scope of consent order); *see also United States v. Acorn Engineering Co.*, 221 F.R.D. 530, 534 (C.D. Cal. 2004) ("Section 113(f)(2) insulates settling PRPs from contribution claims regarding matters addressed in the settlement, while section 113(f)(3)(B) guarantees these settling PRPs the right to seek contribution from non-settling PRPs.").

In sum, the court concludes that Raytheon cannot state a claim for contribution under section 113(f)(3)(B) for costs incurred responding to the UAO.[5]


D.     *Section 107(a)*

Having concluded that section 113(f) recovery is unavailable to Raytheon for costs incurred complying with the UAO, the court turns to consider whether Raytheon may state a claim for cost recovery or contribution under section 107(a).   A cost recovery action under section 107(a) is one seeking full recovery of all response costs incurred by the PRP; an action for contribution seeks recoupment of the portion of costs exceeding the PRP's equitable share of the total costs.   *See Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, ___ F. Supp. 2d ___, ___, 2006 WL 1030321, at *7 (E.D.N.Y. Apr. 20, 2006).   The United States is correct in its assertion that the Tenth Circuit will not permit a PRP to assert a claim for cost recovery under section 107(a).   *See Young .v United States*, 394 F.3d 858, 862-63 (10th Cir. 2005) (PRPs are unable to assert a claim for cost recovery); *Bancamerica Commercial Corp.*

_____

[5]There is no suggestion by either party that a UAO somehow becomes an administrative settlement once the party to whom the UAO is directed fully complies with the terms of the UAO to the satisfaction of the EPA.  Nothing in the text of section 106 suggests that an administrative settlement is reached once a party fully complies with a UAO.  In fact, it appears from the pertinent statutory provisions that compliance with a UAO is entirely distinct from an administrative settlement.  *See Blue Tee Corp. v. ASARCO, Inc*., 2005 WL 1532955, at *7 (W.D. Mo. June 27, 2005) (administrative settlement under section 106 requires approval by the Attorney General, must be approved by the district court as a consent decree and requires public notice before the entry of any consent decrees containing a clean-up requirement; compliance with an UAO necessarily foregoes these prerequisites and thus compliance cannot constitute an administrative settlement).

14

*v. Mosher Steel of Kansas, Inc*., 100 F.3d 792, 800 (10th Cir. 1996) (an action between PRPs to apportion response costs between them is the quintessential claim for contribution). While the EPA has identified Raytheon as a PRP, Raytheon, in its complaint, neither admits nor denies its status as a PRP.   Similarly, in its response to the motion to dismiss, Raytheon's stance concerning its status as a PRP is unclear.   To state a claim for cost recovery under section 107(a), Raytheon must allege in its complaint that it is not a PRP.   *See Morrison Enter. v. McShares, Inc*., 302 F.3d 1127, 1133-34 (10th Cir. 2002) (to sue for cost recovery under section 107(a), party must show that it is not a PRP).   Because Raytheon has not done so, the court grants the motion to dismiss Raytheon's cost recovery claim under section 107(a).   The court, however, would permit Raytheon to file an amended complaint asserting that it is not a PRP if it intends to take that stance in this litigation, and reasserting a claim for cost recovery under section 107(a) under those circumstances.

With respect to Raytheon's claim for contribution under section 107(a), the United States relies on several Tenth Circuit cases to support its assertion that Raytheon, itself a PRP, is precluded from asserting a claim for contribution under section 107(a) because any claim for contribution must be brought under section 113(f).   *See Young v. United States*, 394 F.3d 858, 862-63 (10th Cir. 2005) (a PRP is "unable to assert a cost-recovery claim under the rule in this Circuit that a Plaintiff-PRP must proceed under the contribution provisions of CERCLA § 113(f) when the Plaintiff-PRP sues another PRP for response costs") (citing *Morrison Enter. v. McShares, Inc*., 302 F.3d 1127, 1133 (10th Cir. 2002) (a plaintiff-PRP is "barred from proceeding" under section 107(a)); *Sun Co. v. Browning-Ferris, Inc*., 124 F.3d 1187,

1191 (10th Cir. 1997); *United States v. Colorado & E. R.R. Co.*, 50 F.3d 1530, 1536 (10th Cir. 1995)).[6]

In each of the Tenth Circuit cases relied upon by the United States, the PRPs had viable claims under section 113(f) but nonetheless were attempting to pursue cost recovery or contribution claims under section 107(a) as well.   In *Colorado & Eastern Railroad*, for example, Farmland, a defendant in a section 107(a) suit filed by the EPA, cross-claimed against another PRP seeking cost recovery under section 107(a) or, in the alternative, contribution under section 113(f).   50 F.3d at 1533.   After a bench trial, the district court held that Farmland was entitled to recover a portion of its costs under section 107(a) and found it thus unnecessary to reach Farmland's alternative claim under section 113(f).   *Id.* at 1534.   On appeal, the Circuit held that the court erred in allowing Farmland to recover under section 107(a) as Farmland's claim was clearly controlled by section 113(f).   *Id.* at 1534-36.   In that case, because Farmland had been sued under section 107(a), it was clearly entitled to proceed with its claim against the other PRP under section 113(f)(1).

_____

[6]Indeed, the Supreme Court recently noted that several Courts of Appeals, including the Tenth Circuit, have held "that a private party that is itself a PRP may not pursue a § 107(a) action against other PRPs for joint and several liability." *Cooper Indus., Inc. v. Aviall Servs., Inc*., 543 U.S. 157, 169 (2004) (citing, among other decisions, *United States v. Colorado & E. R. Co.*, 50 F.3d 1530, 1534-36 (10th Cir. 1995)).  The Supreme Court, however, declined to consider whether those decisions are correct. *Id*. at 169-70.  In her dissent, Justice Ginsberg criticized the Court's refusal to consider the issue, noting that in *Key Tronic Corp. v. United States*, 511 U.S. 809 (1994) "no justice expressed the slightest doubt that § 107 indeed did enable a PRP to sue other covered persons for reimbursement, in whole or part, of cleanup costs the PRP legitimately incurred." *Id.* at 172.

Similarly, in *Sun Company*, the plaintiffs brought an action against other PRPs under both section 107(a) and section 113(f) for costs expended in complying with a UAO.  124 F.3d at 1188-89.  The district court granted the defendants' motion for summary judgment on the section 107(a) claim and required plaintiffs to proceed solely under section 113(f).  *Id*. at 1189.  The Circuit affirmed this decision and a reading of *Sun Company* makes clear that plaintiffs were permitted to pursue their claim under section 113(f)(1).[7]  Finally, the Circuit in *Morrison Enterprises* recognized yet again that a PRP "may not proceed with two independent suits under both §§ 9607(a) and 9613(f), but instead may only proceed with an action under § 113(f)."  302 F.3d at 1135.  In that case, the plaintiff was required to expend funds on cleanup by a state administrative order and the Circuit, relying in part on *Sun Company*, held that a PRP seeking reimbursement for funds expended complying with an administrative order must proceed under section 113(f)(1).  *Id*. at 1132-33.

Significantly, then, the Circuit has not been faced with the issue of whether a PRP who cannot state a claim under section 113(f) may proceed with a claim for contribution under section 107(a).  In fact, the Circuit has expressly recognized that it has not yet reached that question.  *See Morrison Enter*., 302 F.3d at 1135 n.2 (noting that the Circuit did not reach the question of  whether a PRP could pursue a claim under section 107(a) if that PRP were "unable to pursue an action for contribution and would therefore be barred from any recourse under CERCLA.").  Contrary to the United States' suggestion, then, Tenth Circuit precedent

_____

[7]As noted above in connection with Raytheon's section 113(f)(1) claim, *see supra* pp. 11-12, this aspect of *Sun Company* has been superseded by *Cooper Industries*.

precludes Raytheon's section 107(a) contribution claim only if Raytheon is able to pursue a claim for contribution under section 113(f).  The court has concluded that Raytheon cannot state a claim under section 113(f) and, under such circumstances, the court writes on a blank slate (at least in the sense that neither the Supreme Court nor the Circuit has resolved the issue) in terms of whether Raytheon may pursue a claim for contribution under section 107(a).

In writing on this "blank slate," however, the court is guided by the decisions of numerous courts that, since *Cooper Industries*, have addressed whether a PRP may seek contribution from other PRPs under section 107(a) when recovery under section 113(f) is unavailable.  Certainly, several district courts have continued to maintain that a PRP is precluded from asserting a claim under section 107(a) regardless of whether relief under section 113(f) is unavailable.  The vast majority of the courts rendering these decisions, however, expressly felt bound by the pre-*Cooper Industries* precedent of their particular Circuits rejecting section 107(a) claims by PRPs and offered very little substantive analysis of the issue.  *See, e.g.*, *Atlantic Research Corp. v. United States*, 2005 U.S. Dist. LEXIS 20484, at *9-10 (W.D. Ark. June 1, 2005) (abiding by 2003 Eighth Circuit precedent while recognizing that such a result was "patently unfair"); *Mercury Mall Assocs., Inc. v. Nick's Mkt., Inc.*, 368 F. Supp. 2d 513, 520 (E.D. Va. 2005) (following 1998 Fourth Circuit precedent but characterizing the result as "quixotic"); *Blue Tee Corp. v. ASARCO, Inc.*, 2005 WL 1532955, at * (W.D. Mo. June 27, 2005) (denying PRP's motion to amend complaint to assert claim under section 107(a), noting that Eighth Circuit authority had not been overruled by *Cooper Industries* and remained controlling authority); *City of Waukeshaw v. Viacom Int'l, Inc.*, 362

18

F. Supp. 2d 1025, 1027-28 (E.D. Wisc. 2005) (*Cooper Industries* did not vacate Seventh Circuit precedent foreclosing section 107(a) claims for PRPs).

Moreover, several district court decisions that relied on pre-*Cooper Industries* precedent have since been superseded by the Second Circuit's opinion in *Consolidated Edison Company of New York, Inc. v. UGI Utilities, Inc.*, 423 F.3d 90 (2d Cir. 2005) ("*Con Ed*").[8] In *Con Ed*, the Second Circuit–the only Court of Appeals to have resolved the issue, post-*Cooper Industries*, of whether a PRP who cannot state a claim under section 113(f) may seek recovery under section 107(a)–held that a PRP who was precluded from pursuing contribution under section 113(f) could pursue cost recovery under section 107(a).   423 F.3d at 97.[9]   In fact, the Second Circuit found that the issue was "easily resolved" based on the plain language of section 107(a)(4)(B) which, in pertinent part, makes parties liable for "any other necessary

─────────────────

[8]Thus, many of the decisions relied upon by the United States in its motion to dismiss–*Cadlerock Props Joint Venture, L.P. v. Schilberg*, 2005 WL 1683494 (D. Conn. July 19, 2005); *Benderson Dev. Co. v. Neumade Prods. Corp.*, 2005 WL 1397013 (W.D.N.Y. June 13, 2005); *AMW Materials Testing, Inc. v. Town of Babylon*, 348 F. Supp. 2d 4 (E.D.N.Y. 2004); and *Elementis Chem. Inc. v. T H Agric. and Nutrition, L.L.C.*, 373 F. Supp. 2d 257 (S.D.N.Y. 2005)–are no longer persuasive on the issue as the Second Circuit's decision in *Con Ed* supersedes those cases. In fact, the only district court within the Second Circuit to have addressed the issue since *Con Ed* held that a PRP who was foreclosed from bringing suit under section 113(f) could nonetheless pursue a contribution claim under section 107(a).  *See Seneca Meadows, Inc. v. ECI Liquidating, Inc.*, ___ F. Supp. 2d ___, 2006 WL 1030321, at *6 (W.D.N.Y. Apr. 20, 2006).

[9]Thus, while the court finds it significant that the Second Circuit now permits a PRP to pursue a claim under section 107(a) when that PRP is barred from seeking recovery under section 113(f), the court does not follow the approach ultimately taken by the Second Circuit in permitting that PRP to pursue cost recovery.  Rather, the court finds that Raytheon has an implied right to contribution under section 107(a) but, in light of its status as a PRP, cannot pursue full cost recovery under section 107(a).  *See supra* pp. 15-16.

costs of response incurred by any other person." *Id.* at 99.  The Circuit's conclusion was also based in large part on the Supreme Court's holding in *Cooper Industries* that a section 113(f)(1) claim is only available during or following a specified civil action such that it "no longer makes sense to view" (as courts had done prior to *Cooper Industries*) "section 113(f)(1) as the means by which the section 107(a) cost remedy is effected by parties that would themselves be liable if sued under section 107(a)." *Id.*

Other district courts since *Cooper Industries* have held that a PRP who cannot seek recovery under section 113(f) may nonetheless bring a claim for contribution under section 107(a).  *See, e.g.*, *Vine Street LLC v. Keeling*, 362 F. Supp. 2d 754 (E.D. Tex. 2005); *Viacom, Inc. v. United States*, 404 F. Supp. 2d 3 (D.D.C. 2005); *Metropolitan Water Rec. Dist. of Greater Chicago v. Lake River Corp.*, 365 F. Supp. 2d 913 (N.D. Ill. 2005).  In *Vine Street*, the court considered the "unique situation where a potentially responsible party is seeking recovery not addressed by Section 113(f)."  362 F.  Supp. 2d at 763.  The plaintiff in *Vine Street* had spontaneously initiated cleanup at the site and sought contribution from other PRPs. *Id.* at 757-58.   After readily concluding that *Cooper Industries* barred the plaintiff's claim under section 113(f)(1), the court held that the plaintiff could bring a claim for contribution under section 107(a)(4)(B).   *Id.* at 763 ("Quite simply a potentially responsible party that voluntarily works with a government agency to remedy environmentally contaminated property should not have to wait to be sued to recover cleanup costs since Section 113(f)(1) is not meant to be the only way to recover cleanup costs.").  As the court explained:

> Section 113(f)(1) did not . . . create contribution actions, as contribution actions

20

have existed ever since CERCLA was first enacted in 1980. *Aviall*, 125 S. Ct. at 581. That is evident from the text of Section 113(f)(1), which contains an "enabling" clause, creating the specific cause of action, and a "savings" clause, preserving other means of seeking contribution. *See id.* at 583-84. *See also Key Tronic Corp. v. U.S.*, 511 U.S. 809, 816 (1994) ("[t]he 1986 amendments included a provision–CERCLA [Section] 113(f)–that expressly created a cause of action for contribution . . . [o]ther SARA provisions, moreover, appear to endorse the judicial decisions recognizing a cause of action under [Section] 107 by presupposing that such an action existed."). One of those other means of seeking contribution is under Section 107(a).

*Id.* at 763-64.

Similarly, in *Metropolitan Water Reclamation District*, the district court held that an implied right of contribution under section 107(a) "remains open to a certain subset of plaintiffs . . . who are not entitled to seek contribution under § 113(f)(1)." 365 F. Supp. 2d at 916. Like the court in *Vine Street*, the district court first emphasized that numerous courts, prior to the enactment of section 113(f)(1), had recognized an implied right to contribution for PRPs under section 107(a). *See id.* Turning to the question of "whether any of the implied rights of recovery for PRPs under § 107(a) survived the SARA amendment," the district court looked to the Supreme Court's language in *Key Tronic*, in which the Supreme Court stated that "the statute now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat overlapping remedy in § 107." *Id.* at 916 (quoting *Key Tronic*, 511 U.S. at 816-17). While recognizing that the existence of an implied right to contribution is "far from a certainty" given that the *Cooper Industries* majority declined to resolve the issue based solely on *Key Tronic*, the district court was ultimately persuaded by the dissenters in *Cooper Industries*:

In the opinion of the dissenting judges, "[f]ederal courts, prior to the enactment of § 113(f)(1), had correctly held that the PRPs could recover [under § 107] a proportionate share of their costs in actions for contribution against other PRPs." [*Cooper Indus.*, 125 S. Ct. at 588]  The dissent further opined that since § 113(f)(1) included a savings clause preserving all preexisting state and federal rights of action for contribution, the implied right of § 107(a) remains open to a certain subset of plaintiffs.   The subset of plaintiffs who may have implied rights of contribution under §107(a) are those, like the Water Rec. Dist., who are not entitled to seek contribution under § 113(f)(1).

*Id*. at 916.   Concluding that the Water Reclamation District was precluded from bringing a claim under section 113(f), the court found that its "only remaining remedy under CERCLA is an implied right to contribution under § 107(a)."   *Id*. at 917.   In summary, the court agreed with the dissenters in *Cooper Industries* "in so far as they express a prediction of the result that would occur when the Court had to decide the question, that if the implied right existed before § 113(f)(1) was added and the right was not encompassed by § 113(f)(1), then it must still lie in § 107(a)."   *Id*. at 918 (quoting *Cooper Industries*, 125 S. Ct. at 588).

Like the courts in *Vine Street* and *Metropolitan Water Reclamation District*, the district court in *Viacom* found an implied right to contribution under section 107(a) for those PRPs who could not state a claim under section 113(f) and did so based primarily on the savings clause of section 113(f)(1) and the implied right to contribution referenced by the Supreme Court in *Key Tronic* and referenced in *Cooper Industries*.   404 F. Supp. 2d at 7-8. In addition, the *Viacom* court looked to the legislative history of section 113(f), "which evidences a Congressional intent to allow contribution claims under the preexisting § 107(a) in addition to those under the new section."   *Id*. at 9 ("Congress intended to 'clarify' and 'confirm,' rather than curtail, the right of contribution that federal courts had previously found

implied in the statute.").

The court finds each of these opinions   well-reasoned and also finds it significant that each court ultimately reaches the same conclusion–that a PRP who is precluded from seeking relief under section 113(f) maintains an implied right to contribution under section 107(a)–despite following various approaches to reach that conclusion.[10]   As will be explained, this court similarly concludes that a PRP who, like Raytheon, is barred from seeking recovery under section 113(f) maintains an implied right to contribution under section 107(a).[11]   The court's conclusion, while informed by the decisions set forth above, is ultimately grounded in the Tenth Circuit's pre-*Cooper Industries* cases concerning the implied right to contribution under section 107(a), the legislative history of section 113(f) and the intended scope of section 113(f).   A careful reading of these cases convinces the court that the Tenth Circuit, if faced with the issue, would conclude that a PRP who cannot state a claim under section 113(f) nonetheless has an implied right to contribution under section 107(a).

While the Tenth Circuit has not yet had occasion to consider whether it would permit a PRP to proceed on the basis of an implied right to contribution under section 107(a), it has

---

[10]While these decisions dealt with PRPs who had voluntarily incurred response costs, the court discerns no pertinent distinction between those PRPs and one who, like Raytheon, incurs costs subject to a UAO.  *See, e.g., Seneca Meadows*, ___ F. Supp. 2d at ___, 2006 WL 1030321, at *8 (PRP operating under consent orders issued by government was entitled to pursue contribution action under section 107(a); PRP had not been sued and thus could not proceed under section 113(f)(1)).

[11]To be clear, Raytheon is not permitted to pursue a contribution claim under section 107(a) with respect to costs incurred performing work required by the AOCs, as those costs may be pursued via section 113(f)(3)(B) and, thus, the Circuit would limit Raytheon to a claim for contribution under section 113(f).

certainly recognized the "inequity" that existed prior to the enactment of section 113(f) in which a PRP who had paid more than its equitable share of cleanup costs had no apparent means of fairly apportioning those costs to other PRPs. *United States v. Colorado & E. R.R. Co.*, 50 F.3d 1530, 1535 (10th Cir. 1995). It has also acknowledged, with approval, that most courts responded to that inequity by recognizing an implied right to contribution under section 107(a) "where PRPs have been subject to joint and several liability and have incurred response costs in excess of their pro rata share." *Id.* As explained by the Circuit, section 113(f) was intended to codify "this implied right of contribution":

> A principal objective of the new contribution section was to clarify and confirm the right of a person held jointly and severally liable under CERCLA to seek contribution from other potentially liable parties, when the person believes that it has assumed a share of the cleanup or cost that may be greater than its equitable share under the circumstances.

*Id.* (alterations and quotations omitted).

The Tenth Circuit's description of the interplay between the implied right to contribution under section 107(a) and the enactment of section 113(f) is consistent with the Supreme Court's language, albeit dicta, in *Key Tronic*. There, the Supreme Court noted that prior to the inclusion of an express provision authorizing a PRP to seek contribution from other PRPs, most courts had "interpreted the statute–particularly the § 9607 provisions outlining the liabilities and defenses of persons against whom the Government may assert claims–to impliedly authorize such a cause of action." 511 U.S. at 816. The Court further stated that, since the enactment of section 113(f), CERCLA "now expressly authorizes a cause of action for contribution in § 113 and impliedly authorizes a similar and somewhat

24

overlapping remedy in § 107." *Id*.   Refusing to classify the right to contribution in section 107(a) as an express right, the Court explained that "although 107 unquestionably provides a cause of action for private parties to seek recovery of cleanup costs, that cause of action is not explicitly set out in the text of the statute." *Id*. at 818 & n.11 (Section 107 "merely says that 'A shall be liable' without revealing to whom A is liable. . . .   That § 107 imposes liability on A for costs incurred "by any other person" implies–but does not expressly command–that A may have a claim for contribution against those treated as joint tortfeasors.").

Consistent with its belief that section 113(f) simply codified contribution rights that previously existed under section 107(a), the Tenth Circuit, like most other courts prior to *Cooper Industries*, consistently read section 113(f)(1) to encompass "all actions by and between jointly and severally liable PRPs." *See Sun Co. v. Browing-Ferris, Inc.,* 124 F.3d 1187, 1193-94 (10th Cir. 1997) ("Our holding . . . recognizes that . . . all actions by and between jointly and severally liable PRPs  are . . . contribution actions governed by section 113(f)."); *accord Morrison Enter. v. McShares, Inc*., 302 F.3d 1127, 1133 (10th Cir. 2002) ("Under § 9613(f)(1), '[a]ny person may seek contribution from any other person who is liable or potentially liable under section 9607(a).'   Thus, an individual PRP who has been left with the entire cleanup cost of a site may attempt to share his liability with other PRPs under § 9613."). Indeed, the Circuit has expressly recognized that section 113(f) did not create a new cause of action, nor did it create any new liabilities. *Sun Co.*, 124 F.3d at 1191.   Rather, section 107(a) "created the right of contribution" and section 113(f) was enacted to regulate those actions and to "confirm the right of a PRP under section 107 to obtain contribution from

25

other PRPs." *See id.* (citing cases). A contribution action under section 113(f), then, is an action for recovery of the costs referred to in section 107(a). *Id.*

The costs referred to section 107(a), of course, include response costs incurred "by any other person." § 107(a)(4)(B). Without question, Raytheon is a "person" for purposes of the statute and it has incurred response costs. Tenth Circuit precedent, then, assumes that Raytheon would have a right to contribution from other PRPs under section 113(f), as that section was intended to codify those rights that previously existed. Indeed, the plaintiff in *Sun Company*, like Raytheon, had incurred costs complying with an UAO. The Tenth Circuit, without hesitation, concluded that the plaintiff's claim was one for contribution under section 113(f)(1). The Supreme Court in *Cooper Industries*, however, significantly narrowed the circumstances in which a PRP may bring a contribution action under section 113(f). Thus, Raytheon's contribution right is not encompassed by section 113(f) as previously presumed by the Circuit. Nonetheless, Raytheon's right to contribution still exists under section 107(a)(4)(B) as section 113(f) was not intended to diminish any rights that existed prior to its enactment. *See* § 113(f)(1) ("Nothing in this subsection shall diminish the right of any person to bring an action for contribution in the absence of a civil action under section 9606 of this title or section 9607 of this title."). As the Supreme Court explained in *Cooper Industries*, the "sole function" of the savings clause of section 113(f)(1) is to "clarify that 113(f)(1) does nothing to 'diminish' any cause(s) of action for contribution that may exist independently of 113(f)(1)." 543 U.S. at 166. Stated another way, "the sentence rebuts any presumption that the express right of contribution provided by the enabling clause is the exclusive cause of

action available to a PRP." *Id.* at 166-67.

Finally, the court notes that permitting Raytheon to pursue a claim for contribution is not only consistent with the language of section 107(a)(4)(B) as interpreted by courts prior to the enactment of section 113 but also consistent with one of the underlying purposes of CERCLA as a whole–to "impose the costs of cleanup on parties responsible for the contamination." *Young v. United States*, 394 F.3d 858, (10th Cir. 2005) (citing *Meghrig v. KFC Western, Inc.*, 516 U.S. 479, 483 (1996)).  It would be entirely inconsistent with this purpose to find that Raytheon, having been singled out by the EPA to clean up TCPA and, thus, having possibly paid more than its equitable share of cleanup costs, had no recourse in contribution against other PRPs to apportion those costs.  *See Colorado & E. R.R. Co.*, 50 F.3d at 1535.

For the foregoing reasons, the court concludes that Raytheon has an implied right to contribution under section 107(a) and may pursue such a claim against the Army Corps of Engineers for some portion of the costs incurred by Raytheon in complying with the UAO.

IV.     **Raytheon's Due Process Claims** [12]

_____

[12]In its complaint, Raytheon asserts its due process claims as an alternative to its claims for cost recovery and/or contribution against the Army Corps of Engineers. Because the court has concluded that Raytheon may pursue a claim for contribution under section 107(a) with respect to costs incurred by it in complying with the UAO, it appears that Raytheon's constitutional challenges may be rendered moot.  Nonetheless, the court proceeds to resolve the issues raised by the United States with respect to these claims because neither party in its briefing on this motion has suggested that the court need not address the issues in the event that the court decided that Raytheon had recourse under

In Count IV of its complaint, Raytheon alleges that the EPA's "pattern and practice" of issuing § 106 administrative orders in non-emergency situations places PRPs, such as Raytheon, in an unconstitutional dilemma by essentially forcing them to clean-up sites without any meaningful pre-deprivation hearing to contest their liability and avoid punishment for non-compliance under CERCLA's treble damages provisions.   Similarly, in Count V, Raytheon raises an as-applied challenge to the specific § 106 order that the EPA issued to Raytheon to clean up TCPA.   The EPA moves to dismiss these claims for lack of subject matter jurisdiction and for failure to state a claim and also asserts that Raytheon lacks standing to assert its pattern and practice challenge.   In addition, the EPA moves for summary judgment on the merits of these claims.   For the reasons explained below, the court finds that it does not have jurisdiction at this point to decide the claims raised in count IV or count V.   In addition, the court finds that Raytheon lacks standing to raise the "pattern and practice" challenge in count IV.   Finally, the court declines to reach the merits of these claims.

*A. CERCLA's Unilateral Administrative Order Regime*

There are various ways that the EPA may proceed in achieving successful environmental cleanup projects under CERCLA.   If practical, the EPA may enter negotiations and obtain voluntary cleanup from a responsible party.   To this end, section 122 of CERCLA authorizes the EPA to negotiate with PRPs in the hopes of obtaining "expedient and efficient settlements

---

CERCLA against the Army Corps of Engineers.

of potential liability." *Dravo Corp. v. Zuber,* 13 F.3d 1222, 1227 (8th Cir.1994); *see also* 42 U.S.C. § 9622.

Aside from negotiations, CERCLA also authorizes the EPA to take more direct action. It empowers the EPA either to clean up a contaminated area or to compel responsible parties to do so. *See Cooper Industries, Inc. v. Aviall Services, Inc.*, 543 U.S. 157, 161 (2004). Thus, one option is for the EPA to clean up a hazardous site by itself (using money from the Superfund) and then sue any party responsible for the contamination under section 107. *See* 42 U.S.C. §§ 9607(a)(4)(A), 9611(a). Another option is for the EPA to issue an administrative order pursuant to section 106 that demands that a party clean up a hazardous waste site upon a finding "that there may be an imminent and substantial endangerment to the public health or welfare or the environment because of an actual or threatened release of a hazardous substance from a facility." 42 U.S.C. § 9606(a).

Upon receiving a section 106 administrative order from the EPA, a party has two primary options. First, if it does not believe that it is responsible for waste at the hazardous site, it can ignore the administrative order. If the party does not comply with that order, the EPA may bring suit in federal court to force compliance. *See* 42 U.S.C. § 9606(a). The EPA may seek civil penalties and punitive damages in that suit. Under section 106(b), any person who "willfully" and "without sufficient cause" violates an administrative order may be fined up to $25,000 for each day the violation or non-compliance continues. 42 U.S.C. § 9606(b). Moreover, under section 107, a party who fails to comply with a section 106 administrative order faces the possibility of punitive damages up to three times "the amount of any costs

incurred by the [Superfund] as a result of such failure to take proper action." *Id.* § 9607(c)(3). The party may otherwise choose to comply with the administrative order and, upon completion, petition the EPA for reimbursement of its costs plus interest. *See* 42 U.S.C. § 9606(b)(2)(A). If the petition is denied, the party may file suit  in federal district court and will prevail only upon a showing that it is not liable for response costs under section 107(a) or, if the party is liable, upon a showing that the required response action was arbitrary and capricious. *See* 42 U.S.C. § 9606(b)(2)(B)-(D).

B.      *Subject Matter Jurisdiction*

The first issue raised by the United States is whether this court has subject matter jurisdiction over Raytheon's constitutional claims at this juncture.   The relevant provision in this action is section 113(h) of CERCLA, which "provides that no federal court shall have jurisdiction to review any challenges to removal or remedial action selected by the EPA under §§ 9604 or 9606(a)." *United States v. City & County of Denver*, 100 F.3d 1509, 1513-14 (10th Cir. 1996).  More specifically, section 113(h) states:

> No Federal court shall have jurisdiction under Federal law other than under section 1332 of Title 28 (relating to diversity of citizenship jurisdiction) or under State law which is applicable or relevant and appropriate under section 9621 of this title (relating to cleanup standards) to review any challenges to removal or remedial action selected under section 9604 of this title, or to review any order issued under section 9606(a) of this title, in any action except one of the following:
>
> > (1) An action under section 9607 of this title to recover response costs or damages or for contribution.

(2) An action to enforce an order issued under section 9606(a) of this title or to recover a penalty for violation of such order.

(3) An action for reimbursement under section 9606(b)(2) of this title.

(4) An action under section 9659 of this title (relating to citizens suits) alleging that the removal or remedial action taken under section 9604 of this title or secured under section 9606 of this title was in violation of any requirement of this chapter. Such an action may not be brought with regard to a removal where a remedial action is to be undertaken at the site.

(5) An action under section 9606 of this title in which the United States has moved to compel a remedial action.

42 U.S.C. § 9613(h).

The court must interpret the statutory meaning of section 113(h). "In cases involving delayed judicial review of final agency actions," the court decides whether initial judicial review is available by looking to "the statute's language, structure, and purpose, its legislative history, and whether the claims can be afforded meaningful review." *Thunder Basin Coal Co. v. Reich*, 510 U.S. 200, 207 (1994) (citations omitted); *see also Colorado Environmental Coalition v. Wenker*, 353 F.3d 1221, 1228 (10th Cir. 2004) ("Whether and to what extent a particular statute precludes review is determined not only from its express language, but also from the structure of the statutory scheme, its objectives, its legislative history and the nature of the administrative action involved.") (citation omitted).

1.      "Pattern and Practice" Challenge

According to Raytheon, its claim in Count IV of the complaint is a "pattern and

31

practice" challenge and is not plead as a facial challenge.   Raytheon contends that these two types of challenges are analogous for purposes of analyzing jurisdiction under section  113(h). It does so, as it must, because there is no clear precedent that a party's "pattern and practice" challenge survives the barrier of section 113(h); those federal circuit courts that have permitted attacks on the EPA's use of section 106 administrative orders have only authorized facial challenges.   Raytheon asserts that "section 113(h) is plainly inapplicable to this claim. Several circuit courts have reached this very conclusion."   Raytheon's assertion, however, is untenable.   After reading the cases Raytheon cites, it becomes clear that only one district court has even mentioned the legitimacy of a "pattern and practice" challenge to the EPA's conduct under section 106 of CERCLA.  *See General Electric Co. v. Johnson*, 362 F. Supp. 2d 327 (D.D.C. 2005).

Moreover, that lone district court opinion sought to interpret the unclear guidance from a remand order by the D.C. Circuit Court of Appeals, see *General Electric Co. v. Johnson*, 360 F.3d 188 (D.C. Cir. 2004).   Far from holding that a "pattern and practice" challenge is appropriate in this realm, the D.C. Circuit advised "that the plain text of 113(h) does not bar GE's *facial* constitutional challenge to CERCLA. . . ."  *Id*. at 189 (emphasis added).   Later in that opinion, the D.C. Circuit explained that "the EPA's functional approach ignores the plain language of § 113(h), which limits the bar to any challenges to removal or remedial actions under § 104 or any orders under § 106(a), not to *facial* constitutional challenges to *the CERCLA statute itself*."  *Id*. at 191 (emphasis added).   Indeed, the explicit limitation to a facial challenge also appears in the final sentence – "we remand the case to the district court to

address the merits of GE's *facial* due process claim." *Id*. at 194 (emphasis added).  Based on

its plain language, then, the D.C. Circuit did not remand the case to allow a "pattern and

practice" challenge to continue.  Instead, like every other circuit court of appeals whose

decision it cited, it held only that a *facial* challenge may proceed beyond the jurisdictional

hurdle of section 113(h).

Regardless of how the district court on remand interpreted the D.C. Circuit's guidance

in that case, this court rejects Raytheon's argument that a "pattern and practice" claim

surpasses the limit of section 113(h) in this case.  Several circuit courts have allowed facial

challenges to proceed, but only because purely legal issues were at issue.[13]  Stripped of this

limitation, these holdings have no application to a fact-laden "pattern and practice" challenge,

which would introduce a quagmire of discovery requests and orders that would disrupt and

delay the EPA's clean-up efforts across the country.  Raytheon broadly requests the right to

engage in an exhaustive examination of EPA's ongoing conduct at numerous clean-up sites, as

_____

[13] Raytheon also contends that a "pattern and practice" claim is affirmed in *Reardon v. United States*, 947 F.2d 1509 (1st Cir. 1991), but Raytheon ignores the critical caveat of that opinion:

> However, it is important to make clear that we are not holding that all constitutional challenges involving CERCLA fall outside the scope of § 9613(h).  A constitutional challenge to EPA administration of the statute may be subject to § 9613(h)'s strictures.  Such a claim may well be a 'challenge  [  ] to removal or remedial action selected under section 9604 of this title,' and may thus fall within § 9613(h)'s bar.  We find only that a constitutional challenge to the CERCLA statute is not covered by § 9613(h).

*Id.* at 1515.

33

it must to determine the EPA's "pattern and practice" under section 106. If granted, this undeniably would entangle the EPA in a web of meddlesome discovery, and nothing could be more contrary to the purpose behind the ban on pre-enforcement judicial review created by section 113(h). *Cf. United States v. City & County of Denver*, 100 F.3d 1509, 1513-14 (10th Cir. 1996) ("In enacting this jurisdictional bar [of § 113(h)], Congress intended to prevent time-consuming litigation which might interfere with CERCLA's overall goal of effecting the prompt cleanup of hazardous waste sites.") (citing *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1019 (3d Cir.1991)).

The federal courts agree that Congress enacted section 113(h) to impose a "blunt withdrawal of federal jurisdiction." *Oil, Chemical and Atomic Workers Intern. Union, AFL-CIO v. Richardson*, 214 F.3d 1379, 1382 (D.C. Cir. 2000) (citation omitted). Although a few federal circuits have recognized the validity of a facial challenge with purely legal issues, those circuits have stopped far short of recognizing the legitimacy of a "pattern and practice" challenge of the EPA's day-to-day practices under section 106. At bottom, neither the language nor the reasoning of the existing circuit court opinions can be used to support a novel "pattern and practice" challenge to the EPA's actions under section 106. Raytheon's contention collapses under the visible weight of authority on the issue.

Embarking on a different path, Raytheon also asserts that jurisdiction is proper based on the enumerated exception in section 113(h)(1). That section provides that the jurisdictional bar in section 113(h) does not apply to "[a]n action under section 9607 of this title to recover response costs or damages or for contribution." 42 U.S.C. § 9613(h)(1). Raytheon contends

that under the plain language of section 113(h)(1), its due process claims in counts IV and V may proceed because it in fact has alleged claims to recover response costs under section 107. As before, however, Raytheon does not offer any precedent that supports its interpretation, and the court is unable to find any recent case examining the jurisdictional interplay between section 113(h)(1) and section 107.

The EPA contends that Raytheon's position would nullify the general rule created by section 113(h) because, under Raytheon's reasoning, if a complaint includes any reference to an action under section 107, then a court must hear every other one of the plaintiff's claims, no matter how unrelated. The EPA argues that if this were the case, then the limited exception carved out in section 113(h)(1) would swallow the general rule of section 113(h). Raytheon in fact does not explain why its interpretation would not open the floodgates to all types of claims, nor does it explain why its section 107 claims are not easily divisible from its claims in counts IV and V. In other words, the court could exercise jurisdiction over some, but not all, of Raytheon's claims at this stage. As a result, the court is wary of accepting Raytheon's unbounded interpretation of section 113(h)(1), especially because Raytheon does not offer any case law that supports this limitless reading.

Second, to further undercut Raytheon's position, the EPA cites *United States v. Charles George Trucking Co., Inc.*, 682 F. Supp. 1260 (D. Mass. 1988). In that case, the plaintiff asserted separate claims against the EPA in the same complaint, and just as Raytheon does here, argued that the inclusion of a section 107 claim necessarily created jurisdiction under section 113(h)(1) for its other claim, even though they were unrelated. The court,

however, held that "[t]he fortuity that the two claims have been brought in a single Complaint cannot be used as mechanism by which to undercut Congress's clear intent in the 1986 amendments to CERCLA to preclude pre-enforcement review of EPA remedies, and, thereby, expedite the clean-up of hazardous wastes." *Id.*  It observed that claims not expressly authorized by section 113(h)(1) are not entitled to proceed past the barrier of section 113(h) "simply because a § 9607 claim is pleaded somewhere in the Complaint." *Id.*  It rejected the same contention that Raytheon makes here and concluded that "there is no right of judicial review of [EPA's] selection and implementation of response action until after the response action[s] have been completed." *Id.*  For all of the above reasons, the court is persuaded that it lacks jurisdiction to hear Count IV.[14]

2.      As-Applied Challenge in Count V

Raytheon fares no better in asserting jurisdiction for Count V, its as-applied challenge. Its one page argument in its response brief asserts only one basis for jurisdiction– it requires this court to find that the exception in section 113(h)(1) applies because the EPA has certified that Raytheon has completed cleanup of TCPA.  In support of its argument, Raytheon relies entirely on an informal letter-to-the-editor of a local newspaper that merely refers to Raytheon's field work at the Site.  Further, Raytheon does not dispute that to be entitled to

---

[14] The EPA also contends that Raytheon's claim in Count IV cannot surpass the independent barrier of sovereign immunity, but because the court finds that it lacks jurisdiction, it is "unnecessary to address separately the sovereign immunity component of that same argument."  *Boarhead Corp. v. Erickson*, 923 F.2d 1011, 1017 (3rd Cir. 1991).

seek reimbursement under the CERCLA regime, the EPA must issue a formal notice of completion, which the EPA has not done.   In fact, in arguing in its sur-reply that it has standing, Raytheon states: "The United States has not certified the cleanup of TCPA complete and additional UAOs may be forthcoming."   Thus, because cleanup at TCPA is not complete, there is no basis for jurisdiction for Count V under section 113(h)(1).

C.      *Standing*

The EPA independently argues that Raytheon lacks standing to raise the so-called "pattern and practice" challenge alleged in count IV. "In every federal case, the party bringing the suit must establish standing to prosecute the action.   'In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues.'"   *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 11-12 (2004) (citation omitted); *see also Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) (same). The Supreme Court has developed two related strands of standing: "Article III standing, which enforces the Constitution's case or controversy requirement; and prudential standing, which embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'"   *Id*. (citation omitted).

For the reasons explained below, the court finds that Raytheon has not met its burden to establish either Article III standing or prudential standing to assert its so-called "pattern and

practice" challenge in count IV.[15]

1.      Article III Standing

"Those who seek to invoke the jurisdiction of the federal courts must satisfy the case-or-controversy requirement imposed by Article III of the Constitution."  *Ward v. Utah*, 321 F.3d 1263, 1266 (10th Cir. 2003) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983)).   "If a dispute is not a proper case or controversy, the courts have no business deciding it, or expounding the law in the course of doing so."  *DaimlerChrysler Corp. v. Cuno*, — S.Ct. —,  2006 WL 1310731, *6 (U.S. May 15, 2006).   To establish Article III standing, a plaintiff must demonstrate "that (1) he or she has suffered an injury in fact; (2) there is a causal connection between the injury and the conduct complained of; and (3) it is likely that the injury will be redressed by a favorable decision."  *Ward*, 321 F.3d at 1266 (quoting *Phelps v. Hamilton*, 122 F.3d 1309, 1326 (10th Cir. 1997));  *see also Robey v. Shapiro, Marianos & Cejda, L.L.C.*, 434 F.3d 1208, 1211-12 (10th Cir. 2006).   "These three elements of standing are an indispensable part of the plaintiff's case and thus the plaintiff must support each element with the manner and degree of evidence required at the successive stages of the litigation."  *Id.* (quotation omitted).

The Supreme Court has "always insisted on strict compliance with this jurisdictional

---

[15]  Aside from a discussion about the retroactive application of a Supreme Court case with uncertain application to standing, the court notes that Raytheon offers only two sentences explaining why it has standing to allege its claim in count IV.

standing requirement." *Raines v. Byrd*, 521 U.S. 811, 819-20 (1997). It has further demanded that the standing inquiry be "especially rigorous when reaching the merits of the dispute would force us to decide whether an action taken by one of the other two branches of the Federal Government was unconstitutional." *Id.* The Supreme Court very recently restated that Article III standing "assumes particular importance in ensuring that the Federal Judiciary respects 'the proper--and properly limited--role of the courts in a democratic society.'" *DaimlerChrysler Corp.*, 2006 WL 1310731, at *6 (quoting *Allen v. Wright*, 468 U.S. 737, 750 (1984) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). Where, as here, a party alleges that an executive agency is violating the Constitution, the court is required to be extremely cautious in deciding to hear the claim:

> Because Plaintiffs have invoked Article III jurisdiction to challenge the conduct of the executive branch of government, the necessity of a case or controversy is of particular import. The warnings against unrestrained exercise of the power of judicial review over the conduct of the executive or congressional branches by relaxation of the standing requirements are numerous and dire. Restraint in the exercise of judicial review preserves not only the power and vitality of the judiciary, but that of each of the other two coordinate branches of federal government as well. Standing to invoke the power of the federal courts is not a mere technical hoop through which every plaintiff must pass, but rather is "a part of the basic charter promulgated by the Framers of the Constitution."

*State of Utah v. Babbitt*, 137 F.3d 1193, 1202 (10th Cir. 1998) (internal citations omitted).

Of primary concern is preserving separation of powers among the three branches of government, and "[i]n the light of this overriding and time-honored concern about keeping the Judiciary's power within its proper constitutional sphere, we must put aside the natural urge to proceed directly to the merits of this important dispute and to 'settle' it for the sake of

convenience and efficiency." *Newdow*, 542 U.S. at 11-12 (internal citations omitted). "The command to guard jealously and exercise rarely our power to make constitutional pronouncements requires strictest adherence when matters of great national significance are at stake. Even in cases concededly within our jurisdiction under Article III, we abide by 'a series of rules under which [we have] avoided passing upon a large part of all the constitutional questions pressed upon [us] for decision.'" *Id.*; *see also Vermont Agency of Natural Resources v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (insisting that Article III standing is "a key factor in dividing the power of government between the courts and the two political branches") (internal citations omitted).

In this case, Raytheon's own sur-reply confirms that it lacks an injury in fact, the first element of Article III standing. Other than the one section 106 administrative order that is subject to its as-applied challenge in count V, Raytheon has not shown that any additional orders from the EPA are forthcoming. To establish an injury in fact, a plaintiff's injury must "be 'actual or imminent, not conjectural or hypothetical.'" *Winsness v. Yocom*, 433 F.3d 727, 732 (10th Cir. 2006) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted)). Raytheon alleges that it is entitled to declaratory relief on count IV because it "faces specific risk of future injury. The United States has not certified the cleanup of TCPA complete and additional UAOs may be forthcoming." That "additional administrative orders <u>may</u> be forthcoming" is the essence of conjecture and speculation, however, as it is axiomatic that "'past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing,

present adverse effects.'"  *Gratz v. Bollinger*, 539 U.S. 244, 284 (2003) (quoting *Lyons*, 461

U.S. at 100).  *Cf. Rector v. City and County of Denver*, 348 F.3d 935, 946 (10th Cir. 2003)

("The abstract possibility that Plaintiffs may receive a contestable parking ticket in the future

certainly does not satisfy Article III's requirements.").

    As in *Winsness*, 433 F.3d at 733, "there is no credible threat that [Raytheon] will be

prosecuted in the future" by another administrative order.  The EPA is not required "to refute

and eliminate all possible risk that [another administrative order] might be enforced."  To the

contrary, "[i]t is the plaintiff's burden to demonstrate an 'actual or imminent, not conjectural

or hypothetical' threat that the statute will be enforced against him . . . ."  *Id.* (quoting *Lujan*,

504 U.S. at 560).  "To seek forward-looking, injunctive relief," Raytheon must show that it

faces "an imminent threat of future injury."  *Gratz*, 539 U.S. at 284 (citing *Adarand*

*Constructors, Inc. v. Peña*, 515 U.S. 200, 210-211 (1995)).  That injury "must be 'likely,' as

opposed to merely 'speculative.'" *Lujan*,  504 U.S. at 561;  *see also DaimlerChrysler Corp.*,

2006 WL 1310731, at *8 ("In addition, the injury is not 'actual or imminent,' but instead

'conjectural or hypothetical.'") (quoting *Lujan*, 504 U.S. at 560).  But "[a]t this point, any

alleged deprivation is conjectural and speculative."  *Smith v. Colorado Dept. of Corrections*,

23 F.3d 339, 341 (10th Cir. 1994).  Thus, because Raytheon has not demonstrated any credible

threat that the EPA will issue against it another section 106 order, Raytheon has not

demonstrated an injury in fact.  "Under such circumstances, we have no assurance that the

asserted injury is 'imminent'—that it is 'certainly impending.'"  *DaimlerChrysler Corp.*, 2006

WL 1310731, at *8 (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990)).  Raytheon

therefore lacks Article III standing to assert its "pattern and practice" challenge.


2.     Prudential Standing

Even if Raytheon were to satisfy "the prerequisites for constitutional standing, [it] must also meet . . . the requirements of prudential standing, a judicially-created set of principles that, like constitutional standing, places 'limits on the class of persons who may invoke the courts' decisional and remedial powers.'"  *Board of County Comm's of Sweetwater Co. v. Geringer,* 297 F.3d 1108, 1112 (10th Cir. 2002); *see also Aid for Women v. Foulston,* 441 F.3d 1101, 1111 (10th Cir. 2006) (observing that  "'the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties.'") (quoting *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

Prudential standing has three components; it "encompasses 'the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked.'" *Newdow*, 542 U.S. at 11-12 (internal citations omitted); *see also Geringer*, 297 F.3d at 1112.


Of the numerous "good and sufficient reasons for the prudential limitation on standing when rights of third parties are implicated," the Supreme Court has emphasized "the avoidance of the adjudication of rights which those not before the Court may not wish to assert, and the assurance that the most effective advocate of the rights at issue is present to champion them."

*Newdow*, 542 U.S. at 2 (citing *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 80 (1978)).  Without this limitation, "'courts would be called upon to decide abstract questions of wide public significance even though other governmental institutions may be more competent to address the questions and even though judicial intervention may be unnecessary to protect individual rights.'"  *Id.*

The Supreme Court specifically has warned that a "programmatic" agency challenge has "obvious difficulties" because, in part, "'suits challenging, not specifically identifiable Government violations of law, but the particular programs agencies establish to carry out their legal obligations . . . [are], even when premised on allegations of several instances of violations of law, . . . rarely if ever appropriate for federal-court adjudication.'"  *Lujan*, 504 U.S. at 568 (citation omitted).  *Lujan* and its progeny articulate the general rule that a party does not have standing to assert a constitutional violation on behalf of third parties.  Applied here, that means Raytheon does not have standing to challenge the issuance of section 106 administrative orders by the EPA to other parties.  Indeed, "like the plaintiff in *Los Angeles v. Lyons*, 461 U.S. 95 (1983), who . . . had no standing to seek injunctive relief preventing future chokeholds, [Raytheon's] past injuries do not give [it] standing to obtain injunctive relief to protect third parties from similar harms."  *Gratz v. Bollinger*, 539 U.S. 244, 284 (2003) (citing *Lyons*, 461 U.S. at 102).  As the EPA argues, Raytheon lacks prudential standing for its "pattern and practice" claim.

To the extent that Raytheon relies on *McNary v. Haitian Refugee Center, Inc.*, 498 U.S. 479, 484 (1991), to assert that "pattern and practice" challenges routinely are successful, the

court disagrees.   The aberrant decision in *McNary* was based on a variety of factors unique to that specific immigration context, and Raytheon does not explain why those factors are present in this case.   More importantly, the Supreme Court in *McNary* never indicated that its holding was meant to apply generally.   In *Lujan*, by contrast, the Court stated that a broad challenge to an executive agency's program is "rarely if ever appropriate for federal-court adjudication." 504 U.S. at 568.   That statement clearly frames a general rule, which the court will follow in this instance.

In conclusion, the court finds that Raytheon lacks both Article III standing and prudential standing to assert the "pattern and practice" claim alleged in count IV.

D.     *The Merits of Raytheon's Due Process Claims*

Finally, the EPA seeks summary judgment on the merits of Raytheon's due process claims.   Because the court has found that it lacks subject matter jurisdiction over these claims, the court declines to explore the merits of these claims as an alternative basis for its judgment.[16]   *See Staggs v. U.S. ex rel. Dept. of Health & Human Servs.*, 425 F.3d 881, 884

---

[16]   The court does not perceive that its assessment of Raytheon's lack of standing to assert count IV violates the rule against analyzing the merits of the case after finding that the court lacks jurisdiction.   *See, e.g.*, *Carolina Cas. Ins. Co. v. Pinnacol Assur.*, 425 F.3d 921, 926 (10th Cir. 2005) ("Because constitutional standing is necessary to the court's jurisdiction, as a general rule it must be addressed before proceeding to the merits.") (citing *Steel Co.*, 523 U.S. at 96-97); *Alliance For Environmental Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 89 (2nd Cir. 2006) ("Although lack of Article III standing and subject matter jurisdiction are distinct concepts, Article III standing remains, as we have noted, a limitation on the authority of a federal court to exercise jurisdiction.") (citations omitted).   In addition, the court's discussion of statutory jurisdiction before

n.2 (10th Cir. 2005) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998) (rejecting the doctrine of hypothetical jurisdiction)); *Gold v. Local 7 United Food and Commercial Workers Union*, 159 F.3d 1307, 1311 (10th Cir. 1998) (declaring that upon finding that it lacks subject matter jurisdiction, a court should not address the merits) (citing *Steele Co.*, 523 U.S. at 94); *see also Radil v. Sanborn Western Camps, Inc.*, 384 F.3d 1220, 1224 (10th Cir. 2004) ("a court must be satisfied that jurisdiction exists before proceeding to the merits of a case").   Moreover, because the court lacks subject matter jurisdiction, addressing the merits of the case would violate separation of powers.  *See Harline v. Drug Enforcement Admin.*, 148 F.3d 1199, 1202 (10th Cir. 1998) (citing *Steel Co.*, 523 U.S. at 94).

**IT IS THEREFORE ORDERED BY THE COURT THAT** the United States' motion to dismiss or, in the alternative, for partial summary judgment (doc. 13) is granted in part and denied in part.

**IT IS FURTHER ORDERED BY THE COURT THAT** Raytheon, if it intends to so assert, shall file an amended complaint asserting that it is not a PRP and reasserting a claim for cost recovery under section 107(a) no later than June 16, 2006.

**IT IS SO ORDERED.**

_____

constitutional standing is not intended to signal that constitutional standing is not a primary consideration.

45

Dated this 26th  day of May, 2006, at Kansas City, Kansas.


s/ John W. Lungstrum
John W. Lungstrum
United States District Judge