DJW/byk

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

RAYTHEON AIRCRAFT CORPORATION,

    Plaintiff,

                  CIVIL ACTION

v.

                No. 05-2328-JWL-DJW

UNITED STATES OF AMERICA,

    Defendant.

### MEMORANDUM AND ORDER

Plaintiff Raytheon Aircraft Company ("Raytheon") brings this action under the Comprehensive Environmental Response Compensation Liability Act ("CERCLA")[1] seeking contribution from the Army Corps of Engineers for environmental cleanup costs of trichloroethylene contamination at the former Herington Army Air Field.  Raytheon seeks to recover from the Army Corps of Engineers all or some portion of the costs that Raytheon has incurred performing work required by Administrative Orders on Consent issued by the Environmental Protection Agency and Kansas Department of Health and Environment and in response to an Unilateral Administrative Order.  The matter is presently before the Court on Raytheon's Motion for Order Compelling Discovery (doc. 42).  As explained below, the motion is granted in part and denied in part.

## I.  Factual Background

The following facts are excerpted from the Court's May 26, 2006 Memorandum and Order (doc. 54) dismissing Raytheon's claims for cost recovery pursuant to CERCLA section 107(a), contribution under CERCLA section 113(f), contribution under federal common law, as well as its

---

[1]42 U.S.C. § 9601 *et seq.*

procedural and substantive due process claims, but finding that Raytheon has an implied right to contribution under CERCLA section 107(a) such that it may pursue a claim for contribution against the Army Corps of Engineers.

From 1942 through 1946, the United States Army constructed and the Army Air Corps operated the Herington Army Air Field ("HAAF").  During this time period, the Army Air Corps processed bombing crews and aircraft as part of the World War II war effort.  The Army Air Corps also performed maintenance on B-29 aircraft, including engine repair, engine replacement, spark plug degreasing, hydraulic repair and repainting.  In conducting such maintenance, the Army Air Corps utilized volatile organic compounds and chlorinated degreasing solvents, including trichloroethylene ("TCE").  The Army Air Corps' civilian and military employees spilled, poured and released these solvents, including TCE, onto the ground at HAAF and into drains that discharged directly to the environment.

In 1948, the United States quitclaimed HAAF to the City of Herington, Kansas.  Thereafter, the City of Herington renamed the site the Tri-County Public Airport ("TCPA") and leased portions of it to commercial tenants, including Beech Aircraft Company ("Beech"), the predecessor to Raytheon.  Beginning in 1950, Beech leased parts of the site from the City and, until 1960, used portions of its leasehold as a military aircraft refurbishing facility and for various manufacturing purposes, including the production of wing fuel dispersing tanks and military aircraft starter generators.

Between 1993 and 1997, the Environmental Protection Agency ("EPA") conducted investigations at TCPA to determine whether the Army Air Corps' activities during World War II caused soil or groundwater contamination.  The EPA detected TCE and other contaminants at

2

TCPA. In October 1997, the EPA tested private groundwater wells in the area around TCPA and detected TCE in some of the groundwater samples. That same month, the EPA contacted Raytheon about contamination at the site and Raytheon's possible status as a potentially responsible person ("PRP"). In 1998, the EPA began an expanded site investigation/remedial investigation at TCPA to clarify that the release of TCE had occurred and to determine the extent of contamination.

In response to a request for information issued by the EPA to the United States Army Corps of Engineers ("USACE"), the Army Corps of Engineers summarily denied that it had polluted TCPA and apparently denied using TCE at the site. In March 2000, the EPA issued an Administrative Order on Consent ("AOC") pursuant to CERCLA section 122(d). In this AOC, the EPA found that Raytheon may be liable under section 107(b) of CERCLA and ordered Raytheon to conduct a removal action to address TCE and TCE degradation products at TCPA.

The AOC further required Raytheon to pay for 100 percent of the work and 100 percent reimbursement of oversight costs incurred by the EPA. Raytheon alleges that it has incurred response costs for work performed under the AOC, including the EPA's oversight costs. The Army Corps of Engineers has not contributed to these costs. In November 2000, Raytheon signed an AOC with the Kansas Department of Health and Environment ("KDHE") to perform a remedial investigation/feasibility study of TCPA. Raytheon alleges that it has incurred response costs for work performed under the KDHE AOC and that the Army Corps of Engineers has not contributed to these costs.

In September 2004, the EPA, pursuant to CERCLA section 106, issued an unilateral administrative order ("UAO") to Raytheon and the City of Herington, in which it identified Raytheon as a PRP and directed Raytheon to excavate and properly dispose of TCE contaminated

soils from an insular location at TCPA where, according to Raytheon, the Army Corps of Engineers operated a TCE-vapor degreaser.  The UAO requires Raytheon to perform work that may cost Raytheon, at a minimum, $3,500,000.00.  Raytheon alleges that the work required by the UAO involves a separate and distinct area of the site from the area where Beech had its wing tank manufacturing operation (an operation that, as conceded by Raytheon, utilized a TCE-degreaser).  Nonetheless, Raytheon agreed to perform the work required in the UAO.

## II.    Nature of the Discovery Dispute

On January 27, 2006, Raytheon served its First Interrogatories and First Request for Production of Documents on the United States.  Raytheon's First Request for Production of Documents set forth 120 individual requests for production of documents.  Raytheon's First Interrogatories to Defendant propounded nine interrogatories.  Relevant to the present motion, Raytheon's discovery requests pertain to six general topics:

(1)    Government activities and the use of chlorinated solvents at HAAF during World War II (First Request Nos. 1–6, 8, 100-01, 104, 106-07; First Interrogatory No. 3);

(2)    The use of trichloroethylene and other chlorinated solvents at Army Air Force bases during World War II (First Request Nos. 7, 9–87, 103, 105; First Interrogatory Nos. 4, 9.);

(3)    The production, acquisition, and supply of trichloroethylene and other chlorinated solvents to World War II military facilities during World War I (First Requests Nos. 118–20, 124, 126-27; First Interrogatory No. 6);

(4)    The priority of the B-29 Program during World War II (First Request Nos. 117–19);

(5)    Investigations performed by either USACE or EPA concerning contamination at HAAF (First Request Nos. 88–91, 93–95, 97, 99, 108, 113–15; First Interrogatory Nos. 2, 5); and

(6)     USACE and EPA investigations of other World War II military facilities concerning the use of trichloroethylene or other chlorinated solvents (First Request Nos. 88-89, 92, 94, 96, 98, 102, 109–12; First Interrogatory Nos. 7, 8).

On March 1, 2006, the United States served its responses and objections to Raytheon's First Interrogatories and First Request for Production of Documents, but produced no documents.  The United States objected to the discovery requests as overbroad, unduly burdensome, and irrelevant to the extent they seek information that does not pertain either to HAAF or to similarly situated Army Air Fields.  The United States defined Similarly Situated Air Fields as "air fields deactivated at the end of or before the end of World War II and found to be eligible as a formerly-used defense site ("FUDS") in the Defense Environmental Restoration Program ("DERP") for a Hazardous, Toxic, and Radioactive Waste ("HTRW") Project."  As of the date of the United States' response, it had identified approximately 100 Similarly Situated Air Fields.

On March 3, 2006, Raytheon served three additional interrogatories as its Second Interrogatories and two additional requests for production of documents as its Second Request for Production of Documents.  Raytheon's Second Interrogatory No. 10 requests that the United States identify by name and location the 100 Similarly Situated Air Fields referenced in the United States' opening discovery responses.  On April 5, 2006, the United States served its Response to Raytheon's Second Interrogatories, which identified by name and location the "100 Similarly Situated Air Fields." That same day, it served its Response to Raytheon's Second Request for Production of Documents stating that "USACE will produce responsive, non-privileged project documents pertaining to hazardous substance contamination at the Similarly Situated Air Fields."

The United States produced more than 13,000 pages of documents in electronic format as part of its Rule 26(a) disclosures on March 15, 2006.  It further produced 7892 pages and 4123 pages of documents in response to Raytheon's discovery requests on May 3 and 5, 2006.

In its motion to compel discovery currently pending before the Court, Raytheon seeks an order compelling the United States to (1) provide complete responses to its discovery requests, which are not limited to Similarly Situated Air Fields, (2) search all appropriate USACE and EPA offices for responsive documents and information, (3) disclose the location of responsive documents it knows to exist within public repositories, (4) timely produce responsive documents and information from Raytheon's discovery requests, and (5) identify and produce all investigations and electronic databases concerning contamination at World War II Army Air Force bases.

The United States opposes the motion to compel discovery on the grounds that Raytheon's motion is premature and violates D. Kan. Rule 37.2 in that counsel for the parties were still engaged in discussions at the time the motion was filed.  It further contends that Raytheon's discovery requests are overbroad, unduly burdensome, and irrelevant.  Finally, it maintains that it has reasonably complied with Raytheon's discovery requests, as limited by its objections, and is continuing so to do.

## III.    Issues

### A.    Prematurity/Failure to Confer Objection

The United States argues that Raytheon's motion to compel is premature and should be denied for failure to comply with D. Kan. Rule 37.2.  It argues that Raytheon's counsel gave no indication that an impasse had been reached in the parties' discovery conferring process or that a motion was forthcoming.

District of Kansas Rule 37.2 provides:

The court will not entertain any motion to resolve a discovery dispute pursuant to Fed. R. Civ. P. 26 through 37 . . . unless counsel for the moving party has conferred or has made reasonable effort to confer with opposing counsel concerning the matter in dispute prior to the filing of the motion.  A "reasonable effort to confer" . . . requires that the parties in good faith converse, confer, compare views, consult and deliberate, or in good faith attempt to do so.[2]

The Court finds that Raytheon has established that it made reasonable efforts to confer with the United States concerning the matter in dispute, notwithstanding the fact that Raytheon may not have advised the United States that it intended to file a motion to compel.  Raytheon notified the United States that its discovery responses were inadequate in early March 2006.  The parties participated in a telephone conference regarding the United States' response to Raytheon's first and second sets of discovery requests on April 17, 2006.  The United States did not respond to Raytheon's request to withdraw the "Similarly Situated Air Field" limitation.  The Court finds that Raytheon's motion is not premature.  The United States' prematurity objection to the motion is therefore overruled.

**B.      Similarly Situated Air Fields Discovery Limitation**

Raytheon seeks an order compelling the United States to provide complete responses to its discovery requests, which are not limited to the United States' definition of Similarly Situated Air Fields. Raytheon argues that the United States has improperly limited the scope of the discovery requests to Similarly Situated Air Fields, which thus limits the sources of information only to (1)

---

[2]D. Kan. Rule 37.2 (2006).

7

USACE HTRW Center of Expertise,[3] (2) Kansas City, Kansas USACE office, and (3) those USACE offices responsible for the Similarly Situated Air Fields.

The United States objects to Raytheon's discovery requests on the grounds that they are overbroad, unduly burdensome, and irrelevant to the extent they seek information that does not pertain to either HAAF or to Similarly Situated Air Fields. Raytheon objects to the United States' unilateral limitation of its discovery requests to HAAF and Similarly Situated Air Fields. It argues that the United States cannot unilaterally limit the scope of discovery. It further takes issue with the United States' definition of Similarly Situated Air Fields and the sites included within that definition.

"A party objecting to discovery on the basis of overbreadth must support its objection, unless the request appears overly broad on its face."[4] The Court has reviewed Raytheon's First Requests for Production and First Interrogatories and finds that, to the extent these discovery requests seek documents and information for air fields other than HAAF and other Similarly Situated Air Fields, they are overly broad on their face. For example, Raytheon's First Request Nos. 9 and 10 seek, respectively, "[a]ll documents concerning TCE (also known as [various military specification numbers for TCE])" and "[a]ll documents concerning 'Solvent; Dry Cleaning' Federal Specification No. P-S-661 and P-S-661a ." Request No. 14 asks for "[a]ll documents evidencing the purchase or acquisition of TCE and/or chlorinated solvents between 1940 and 1947 for use by [Department of Defense] facilities, including the USAF." The Court finds that these requests are overly broad on

_____

[3]The HRTW Center of Expertise is an USACE office that provides scientific, engineering, technical, and legal expertise to other USACE offices nationwide in support of the environmental restoration, compliance, and liability programs, projects, and cases assigned to USACE.

[4]*Cory v. Aztec Steel Bldg., Inc*., 225 F.R.D. 667, 672 (D. Kan. 2005).

their face.  These overly broad discovery requests place an undue burden on the United States in responding to them.  Raytheon's discovery requests, in their present form without appropriate limitation, would require the United States to search for documents for several hundred Army Air Forces installations where maintenance activities may have occurred in the continental United States from 1940-1947.  Moreover, the relevance of such wide-sweeping discovery is suspect.  In order to prevail in this action, Raytheon must prove that the Army released TCE into the environment at HAAF.  Discovery on other Army Air Force sites would only be relevant if those sites performed maintenance functions similar to those performed at HAAF.  This discovery would be relevant to whether TCE was available during World War II and whether TCE would have been used at HAAF. The United States' objections to Raytheon's discovery requests on the grounds they are overbroad, unduly burdensome, and irrelevant to the extent they seek information that does not pertain to either HAAF or to similarly situated Army Air Fields are therefore sustained.

After asserting its objections, the United States responded to Raytheon's discovery requests by unilaterally limiting the scope of those requests to information and documents pertaining to HAAF and other Similarly Situated Air Fields.  Because the United States has a duty under the federal rules to respond to discovery requests to the extent they are not objectionable,[5] its discovery responses asserting its objections and limiting the scope to HAAF and other Similarly Situated Air Fields are appropriate.  Raytheon's Motion to Compel the United States to provide complete responses to its discovery requests, which are not limited to Similarly Situated Air Fields, is denied.

---

[5]*See Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.,* 209 F.R.D. 208, 213 (D. Kan. 2002) ("[d]espite having a valid objection to a request, a party generally is still required to answer a request to the extent it is not objectionable") (citing *Mackey v. IBP, Inc.*, 167 F.R.D. 186, 197 (D. Kan. 1996)).

Raytheon also argues that the United States' Similarly Situated Air Fields limitation is inadequate. It asserts that it is entitled to discovery at sites with similar operations as HAAF regardless of whether those sites operated after World War II, an investigation has been performed on those sites, the United States has assigned the sites HTRW project numbers, TCE has been detected, or the United States has unilaterally determined the Department of Defense ("DoD") caused the contamination. Raytheon further claims that even by the United States' Similarly Situated Air Fields definition, it fails to include sites that are similarly situated, such as other bases with operations similar to HAAF, i.e., the processing of heavy bombers including B-29 aircraft. Raytheon points out that the United States' list of Similarly Situated Air Fields fails to include B-29 air fields in New Mexico, Texas, Kansas and Nebraska; bases which Raytheon claims should be included as Similarly Situated Air Fields. Raytheon alternatively urges the Court to redefine Similarly Situated Air Fields so that it includes World War II air fields whose operations were similar to the operations conducted at HAAF.

When inadequate guidance exists to determine the proper scope of a request for discovery, the court will not compel the responding party to provide further response to the discovery requests.[6] The Court determines that inadequate guidance exists for it to appropriately define what should constitute a Similarly Situated Air Field. The Court will therefore deny Raytheon's request to redefine Similarly Situated Air Fields.

Although the Court declines to redefine Similarly Situated Air Fields, the Court will order the parties to further confer toward a more mutually-agreeable definition of Similarly Situated Air

---

[6]*Moses v. Halstead*, --- F.R.D. ----, Civ. A. No. 05-2488-KHV-DJW, 2006 WL 2257711, at *3 (D. Kan. July 28, 2006).

Fields.  **By September 19, 2006**, Raytheon shall serve the United States with its listing (by name and location) of the sites that it contends should be considered a Similarly Situated Air Field for purposes of limiting the scope of its First Interrogatories and First Request for Production of Documents.  Raytheon's proposed listing of Similarly Situated Air Fields shall not exceed 100 sites.

**On or before October 31, 2006**, the United States shall produce documents and information responsive to Raytheon's First Interrogatories and First Request for Production of Documents for those sites that the parties agree are Similarly Situated Air Fields.  For those sites listed by Raytheon and not included in the United States' list of "100 Similarly Situated Air Fields," the United States, **within ten days after receiving Raytheon's listing**, shall serve a response to Raytheon indicating whether it agrees that those sites should be considered Similarly Situated Air Fields.  If the United States agrees that these sites should be considered Similarly Situated Air Fields, then it should also propose a time table for producing documents and information responsive to Raytheon's discovery requests for those sites.  After the parties have completed this process and if they remain unable to resolve their dispute regarding what sites should be considered Similarly Situated Air Fields, then they shall notify the Court and the matter will be set for a telephone conference.

### C.    Scope of Search Efforts

Raytheon also seeks an order compelling the United States to search all appropriate USACE and EPA offices for responsive documents and information.  It argues that the United States has unilaterally and improperly narrowed the scope of discovery and the only locations being searched for responsive documents are the HTRW Center of Expertise in Omaha, the Kansas City, Kansas USACE office, and those USACE offices involved with the "Similarly Situated Air Fields."  In response, the United States asserts that it has repeatedly indicated to Raytheon that EPA would

search its files for relevant responsive documents.  It advised Raytheon that it will take significant time for EPA and USACE to review files in each of their regional and national offices and have them ready for production.

Based upon the Court's discussion of the Similarly Situated Air Fields discovery limitation set forth above in section III.B., Raytheon's request for an order compelling the United States to search all USACE and EPA offices and databases, other than those pertaining to HAAF and Similarly Situated Air Fields, is denied.

D.    **Public Repositories Documents**

Raytheon requests an order compelling the United States to disclose the location of responsive documents it knows to exist within public repositories.  Throughout its responses to Raytheon's discovery requests, the United States responded by stating that "responsive information may be publicly available, and to the extent responsive information exits in public repositories, it is equally available to the plaintiff as to the United States."  Raytheon asserts that this objection is insufficient to resist a discovery request and the United States should be therefore compelled to identify the location of those responsive documents it knows to exist in a public repository.

The United States indicates in its response to the motion that it has already agreed to produce all documents located within its search parameters that are also publicly available.  It also states it has provided information regarding the location of some publicly available information and has agreed to see if additional such information is available.  It states that at no time has it withheld documents or refused to provide documents in the possession of the EPA or the Corps on the grounds that the information is publically available.  The United States continues to object to any discovery request that would require it to search public repositories for the purpose of responding

12

to discovery.  It explains that its reference to publicly available information was merely provided to alert Raytheon to the possibility of potential additional information beyond that within the possession of the USACE or EPA.

Raytheon argues that the United States misinterprets the issue.  The question for the Court to resolve is whether the United States should identify documents it knows to exist within public repositories (its own or others) that not in the possession of EPA or USACE.

The United States is correct when it cites the well established rule that "discovery need not be required of documents of public record which are equally accessible to all parties."[7]   However, in this case, the Court finds that the information that may be available in public repositories is not equally accessible to the parties.  The United States is far more likely than Raytheon to know which public repositories may possess the documents and information Raytheon seeks.

The Court will therefore grant Raytheon's request for an order compelling the United States to disclose the location of responsive documents it knows to exist within any public repositories. If the United States has knowledge of information or documents responsive to Raytheon's discovery requests located in public repositories, even those not in the possession of the USACE or EPA, then it shall provide that information in its discovery responses.

In addition to requesting that the United States disclose the location of responsive documents it knows to exist in public repositories, Raytheon asks that the United States be compelled to provide further information on the investigations referenced in its discovery responses.  Specifically, the United States' response to Raytheon's First Interrogatory No. 2 identifies the dates and locations of

---

[7]*Snowden v. Connaught Labs., Inc.*, 137 F.R.D. 325, 333 (D. Kan. 1991) (quoting *SEC v. Samuel H. Sloan & Co.*, 369 F. Supp. 994, 995 (S.D.N.Y. 1973)).

a prior investigation in which government representatives searched various public repositories for information regarding TCE during World War II.  Raytheon requests that the United States further identify the documents or groups of documents that were reviewed and the exact location of such documents.

The Court has reviewed the United States' response to Interrogatory No. 2 and notes that the United States identified eleven different searches performed by governmental representatives. In most cases, the United States' response states "records searched" with no further indication of what types or categories of records were searched.   The Court will grant Raytheon's request to compel the United States to identify the documents or groups of documents that were reviewed and the location of these documents referenced in First Interrogatory No. 2. **Within 30 days of the date of this Memorandum and Order**, the United States shall supplement its response to Raytheon's First Interrogatory No. 2 and identify the documents or groups of documents that were reviewed and the location of these documents.  The location shall be sufficiently identified so that Raytheon could reasonably be expected to locate the documents.

### E.      TCE Contamination Investigations and Electronic Databases

Raytheon also asks the Court to compel the United States to identify and produce all investigations and electronic databases concerning contamination at World War II Army Air Force bases.  Raytheon's First Interrogatory No. 4 asks the United States to "identify all investigations performed at any facility utilized during World War II by the USAF concerning contamination related in whole or part to [TCE] or other chlorinated solvents."  First Interrogatory No. 5 similarly requests identification of "all electronic databases and their custodians concerning contamination at HAAF and/or other DoD bases operated by the United States or civilian contractors during World

14

War II." The United States asserted vague/ambiguous, overbroad, unduly burdensome, and relevance objections to the interrogatories. The United States further responded to the interrogatories as follows:

> Subject to, and without waiving its general or specific objections, the United States refers Plaintiff to the DERP Annual Reports that identify all DERP environmental restoration projects that have been conducted by the DoD or its Components. These DERP Annual Reports for the Fiscal Years 1994 through 2004 are accessible on internet at: https://www.denix.osd.mil/denix/Public/Library/CleanupOfc/arc/index.html. The United States further responds that this interrogatory is so overbroad as to be unanswerable by EPA at this time.

Raytheon's First Interrogatory No. 7 requests that the United States "[i]dentify all DoD facilities utilized by the Army Air Force/Army Air Corps during World War II where [TCE] or other chlorinated solvent contamination has been detected." The United States again asserted vague/ambiguous, overbroad, unduly burdensome, and relevance objections to this interrogatory and referenced the same website where the DERP Annual Reports can be found. The United States further responded that it will produce responsive, non-privileged documents relating to TCE or chlorinated solvent contamination at HAAF and at any Similarly Situated Air Fields.

Raytheon asserts that these interrogatories are not vague, ambiguous, overly broad, or unduly burdensome. It argues that these interrogatories only request documents related to investigations or electronic databases concerning contamination at HAAF or other World War II facilities operated by the Army Air Force. Raytheon further claims that the United States' referral to a website in its interrogatory responses is not appropriate due to authenticity concerns on information obtained from the website. Further, it argues that the United States is in a much better position to identify and locate such investigations and databases. Finally, Raytheon points out that it requested all

investigations and databases concerning contamination at HAAF and other World War II Army airfields, not just those records that may appear on a website.

The United States maintains that it has reasonably responded to Raytheon's interrogatories, which call for vast amounts of information relating to thousands of military installations. It further objects to Raytheon's interrogatories as they are not limited to investigations of TCE use or chlorinated solvent use. It argues that its reference to the website that contains the DERP Annual Reports that identify all DERP environmental restoration projects conducted by DoD or its components is sufficient and a reasonable response to these interrogatories. The information is public and as readily available to Raytheon as it is to the United States.

The Court agrees with the United States that Raytheon's Interrogatory Nos. 4, 5, and 7, which respectively seek identification of investigations and electronic databases for "any facility utilized during World War II by the USAF," "DoD bases operated by the United States or civilian contractors during World War II," and "all DoD facilities utilized by the Army Air Force/Army Air Corps during World War II" are all overly broad on their face. Notwithstanding such objections, the United States answered the interrogatories by providing a website address for Raytheon to locate responsive documents. In the current motion before the Court, Raytheon requests an order compelling the United States to identify all investigations and electronic databases concerning TCE contamination at all World War II Army Air Force bases. In accordance with the Court's holdings herein that Raytheon's discovery requests are overly broad on their face, the Court will deny Raytheon's request for all investigations and electronic databases concerning TCE contamination at all World War II Army Air Force bases.

Raytheon alternatively requests in its reply brief that, at a minimum, the United States should provide an index to the databases or should provide a knowledgeable member of its staff to assist it in its review of the databases.  The Court finds this to be a more reasonable request than compelling the United States to identify all investigations and electronic databases concerning TCE contamination at "any facility utilized during World War II by the USAF," "DoD bases operated by the United States or civilian contractors during World War II," and "all DoD facilities utilized by the Army Air Force/Army Air Corps during World War II."  The United States shall, at Raytheon's indicated preference, either provide an index to the electronic databases or shall provide a knowledgeable member of its staff to assist Raytheon in its review of the databases.

**IT IS THEREFORE ORDERED THAT** Plaintiff's Motion for Order Compelling Discovery (doc. 42) is granted in part and denied in part.  Raytheon's request for an order compelling the United States to provide complete responses to its discovery requests, not limited to the "Similarly Situated Air Fields," is denied.  Raytheon's request for the Court to redefine Similarly Situated Air Fields is denied.  The Court, however, will order the parties to further confer toward a more mutually-agreeable definition of Similarly Situated Air Fields.  **By September 19, 2006**, Raytheon shall serve the United States with its listing (by name and location) of the sites that it contends should be considered a Similarly Situated Air Field for purposes of limiting the scope of its First Interrogatories and First Request for Production of Documents.  Raytheon's proposed listing of Similarly Situated Air Fields shall not exceed 100 sites.  **On or before October 31, 2006**, the United States shall produce documents and information responsive to Raytheon's First Interrogatories and First Request for Production of Documents for those sites that the parties agree are Similarly Situated Air Fields.  For those sites listed by Raytheon and not included in the United

17

States' list of "100 Similarly Situated Air Fields," the United States, **within ten days after receiving Raytheon's listing**, shall serve a response to Raytheon indicating whether it agrees that those sites should be considered Similarly Situated Air Fields.  If the United States agrees that these sites should be considered Similarly Situated Air Fields, then it should also propose a time table for producing documents and information responsive to Raytheon's discovery requests for those sites. After the parties have completed this process and if they remain unable to resolve their dispute regarding what sites should be considered Similarly Situated Air Fields, then they shall notify the Court and the matter will be set for a telephone conference.

**IT IS FURTHER ORDERED THAT** Raytheon's request for an order compelling the United States to search all appropriate USACE and EPA offices for responsive documents and information is denied.

**IT IS FURTHER ORDERED THAT** Raytheon's request for an order compelling the United States to disclose the location of responsive documents it knows to exist within public repositories is granted.

**IT IS FURTHER ORDERED THAT** Raytheon's request to compel the United States to identify the documents or groups of documents that were reviewed and the location of these documents referenced in First Interrogatory No. 2 is granted.  **Within 30 days of the date of this Memorandum and Order**, the United States shall supplement its response to Raytheon's First Interrogatory No. 2 and identify the documents or groups of documents that were reviewed and the location of these documents.  The location shall be sufficiently identified so that Raytheon could reasonably be expected to locate the documents.

**IT IS FURTHER ORDERED THAT** Raytheon's request for an order compelling the United States to identify and produce all investigations and electronic databases concerning contamination at World War II Army Air Force bases is denied.  However, the United States shall, at Raytheon's indicated preference, either provide an index to the electronic databases or shall provide a knowledgeable member of its staff to assist Raytheon in its review of the databases.

**IT IS FURTHER ORDERED THAT** each party shall bear its own costs related to this motion.

**IT IS SO ORDERED**.

Dated in Kansas City, Kansas on this 5th day of September, 2006.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge


cc:     All counsel