IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
AT KANSAS CITY

|  |  |
|---|---|
| RAYTHEON AIRCRAFT COMPANY )<br>)<br>Plaintiff )<br>)<br>v. )<br>)<br>UNITED STATES OF AMERICA )<br>)<br>Defendant )<br>) | Case No. 05-2328 JWL |

**RAYTHEON AIRCRAFT COMPANY'S RESPONSE TO UNITED STATES'
MOTION TO QUASH DEPOSITION OF ATTORNEY CATHERINE SANDERS**

Plaintiff Raytheon Aircraft Company ("RAC") hereby submits its response to Defendant United States' Motion to Quash Deposition of Attorney Catherine Sanders. For the reasons stated herein, Defendant's Motion to Quash should be denied.

**INTRODUCTION**

Congress legislated a powerful tool for the U.S. Environmental Protection Agency's ("EPA's") use in developing information about contaminated sites. The Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA") provides EPA with authority to issue an interrogatory-like information request (often referred to as a "104(e) request") to "potentially responsible parties" ("PRPs"). See 42 U.S.C. § 9604(e). EPA requires PRPs to certify truthful responses to such inquiries as the PRPs' activities conducted at certain sites, the use of hazardous substances, and the toxicity and volumetric share of such substances. Failure to timely provide a response, or to provide accurate and complete information in that response, subjects the recipient of

the 104(e) request to liability for civil and criminal penalties. EPA pursues such enforcement actions regularly.

Catherine Sanders submitted responses to EPA's 104(e) requests on behalf of Defendant U.S. Army Corps of Engineers ("USACE"). EPA had requested that USACE identify the nature and terms of operations and processes, as well as any hazardous substances/hazardous wastes used or generated by the U.S. Army Air Force at Herington Army Air Field ("HAAF"). In response to an October 31, 1997, request, Ms. Sanders stated that "[t]here is no evidence to indicate that the operations of [HAAF] included the use of hazardous substances/hazardous wastes." See Ltr. from Catherine R. Sanders, Assistant District Counsel, Kansas City District Corps of Engineers, to Mr. David A. Hoefer, Office of Regional Counsel, U.S. EPA Region VII (Dec. 22, 1997) at 3 (attached to this Response as Exhibit A). According to the USACE 30(b)(6) witness on this topic, Ms. Sanders prepared and submitted the response without any technical assistance, after a limited investigation that consisted, at most, of a review of the Kansas City District's project files. See Deposition of Ed Kost (Nov. 8, 2006), at 32:23–33:04, 33:17–33:21 (attached to this Response as Exhibit B). Ms. Sanders was also instrumental in preparing USACE's response to EPA's subsequent 104(e) request dated July 30, 2004. See Ltr. from Kevin W. Bond, District Counsel, Kansas City District Corps of Engineers, to Scott Pemberton, Environmental Protection Agency (July 30, 2004) at Enclosure C p. 1 (attached to this Response as Exhibit C) (enclosing USACE's 104(e) response, which lists Ms. Sanders as an author of the response). USACE's response stated that "[b]ased upon a review of information collected to date, TCE or other material containing TCE,

was not shipped to, stored, employed, handled, disposed of, or otherwise used at HAAF during 1943–1945." See id. at Enclosure C p. 2.

Discovery suggests that Ms. Sanders' responses to these 104(e) requests may have been at best unresearched and incomplete, and possibly even deliberately untrue. RAC thus seeks to depose Ms. Sanders to obtain information about the scope of her investigation into Defendant's activities at HAAF, and to identify the information known to Ms. Sanders at the time she prepared USACE's responses to EPA's 104(e) requests. Such information is necessary to establish USACE's *modus operandi* in responding to those requests.

Defendant moved to quash RAC's deposition of Ms. Sanders because as USACE's in-house counsel, she is "opposing counsel" and thus protected under the standard announced in Simmons Foods, Inc. v. Willis, 191 F.R.D. 625 (D. Kan. 2000). See Motion to Quash at 4–6. RAC does not dispute that Ms. Sanders should be considered "opposing counsel." However, RAC meets its burden under Simmons Foods to establish that deposing Ms. Sanders is both necessary and permissible on these facts.

## ARGUMENT

Generally, depositions of opposing counsel are limited. If a party can show, however, that (1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case, then such depositions may be allowed. Each criterion is satisfied here.

**1.      Deposing Attorney Catherine Sanders is the Only Means to Obtain the Information Sought by RAC.**

RAC seeks information regarding Ms. Sanders' investigation into activities at HAAF prior to submitting USACE's 104(e) responses and the information known to Ms. Sanders at the time she prepared the responses. Deposing Ms. Sanders is necessary because Ms. Sanders is the only person with first-hand knowledge of such information. In Hay & Forage Industries v. Ford New Holland, Inc., 132 F.R.D. 687 (D. Kan 1990), this Court held that deposing opposing counsel was the "only reasonably practical means available for obtaining the information" on similar facts. In that case, the information sought related to "allegations of inequitable conduct," which concerned alleged misrepresentations made by the opposing counsel. Here, RAC is similarly seeking information regarding the conduct and representations of opposing counsel. This Court has permitted a deposition of opposing counsel when the plaintiff could not show that another witness "would be a better source than the person with first-hand knowledge about the alleged inequitable conduct," see id. at 690 (also noting that the opposing counsel "appears to have led" the case), and should decide similarly here.

As shown in discovery thus far, the information sought is not equally available from other witnesses who simply refuse to disclose that information based on claims of privilege or other grounds. See Simmons Foods, 191 F.R.D. at 631 (refusing to permit a deposition of opposing counsel when there was no reason to believe that the information sought was in the exclusive possession of the opposing counsel, and the relevant discoverable information was equally available from another witness, notwithstanding that the witness refused to disclose the information). Rather, the information sought by RAC cannot be obtained by deposing any other witness.

In RAC's 30(b)(6) deposition on this topic, Defendant put forward Mr. Ed Kost, a USACE employee who, during the deposition, consistently deferred to Ms. Sanders as "the best person to ask about the responses." See Deposition of Ed Kost (Nov. 8, 2006) at 96:16–97:01 (Exhibit B). See also id. at 32:23–33:4 (stating that Ms. Sanders and, to Mr. Kost's knowledge, no one else, was involved in the preparation of USACE's 1997 104(e) response); id. at 120:05–120:12 (answering "I don't know the answer to that question" in response to a question regarding USACE's 1997 104(e) responses, but noting that Ms. Sanders would know the answer); id. at 149:11–149:18 (noting that "Ms. Sanders wrote most of the answers" for USACE's 2004 responses); id. at 216:13–216:17 (answering "I do not recall" in response to a question regarding the receipt of a document, and stating that Ms. Sanders may be the person to talk to regarding the answer); id. at 242:06–242:11 (answering "I don't know" in response to a question regarding whether Ms. Sanders commented on a document).  Not only did Mr. Kost lack first-hand knowledge of the noticed 30(b)(6) topic, but he relied on the 104(e) responses prepared by Ms. Sanders in preparing for his deposition testimony. See id. at 17:10–17:23. Defendant nevertheless argues that deposing Ms. Sanders is not necessary because Mr. Kost addressed USACE's investigations and preparation of USACE's 104(e) responses. See Motion to Quash at 7.  Defendant must not be permitted to shield its knowledgeable witness behind other USACE employees who cannot adequately testify on factual questions posed.

Other depositions also indicate that Ms. Sanders is the only individual who can testify regarding the preparation and accuracy of USACE's responses.  USACE's Stan Bauer denied any significant involvement in the preparation of USACE's 104(e)

STLD01-1274848-6

responses. See, e.g., Deposition of Stan Bauer (July 24, 2006) at 21:10–21:17 (attached to this Response as Exhibit D) (stating he was "somewhat" involved in responding to FOIA requests, but that the 104(e) responses were "primarily . . . handled by the attorneys and possibly the Kansas City district"); id. at 228:18–228:23 (stating that he did not have any involvement in the preparation of the 104(e) response except for maybe providing certain documentation, "but otherwise, I didn't prepare it at all"). Significantly, Mr. Bauer relied on the 104(e) responses prepared by Ms. Sanders in preparing for his deposition testimony. See id. at 228:10–228:14 (stating that he "flipped through some of the documents that were attached to Kansas City's 104(e) report" in preparation for his deposition). USACE's Joseph Novak based deposition answers solely on the 104(e) responses and documents submitted to EPA along with the responses. See, e.g., Deposition of Joseph Novak (June 20, 2006) at 9:12–9:19 (attached to this Response as Exhibit E) (stating that he had reviewed only USACE's 104(e) responses to prepare for his deposition). The 104(e) responses therefore play a significant role in this case, and neither Mr. Bauer nor Mr. Novak can attest to the source and accuracy of the statements in such responses. Most notably, however, the government's own chosen deponent on the issue, Mr. Kost, deferred to Ms. Sanders. Ms. Sanders is the USACE representative with sufficient knowledge of those certain facts being sought and is therefore best situated to testify regarding the information known by USACE when she prepared and submitted the 104(e) responses to EPA.

     A deposition is the only reasonably practical means of discovery for RAC to obtain the information sought. Although this Court has observed that a party seeking to depose opposing counsel should explore other methods of discovery, such as written

interrogatories, requests for production, or requests for admission, see Hay & Forage, 132 F.R.D. at 689, this Court has also noted that exhausting such other methods may be unnecessary given the specific information sought. See id. at 690. When the information sought is "broad and unspecific" information such as explanations regarding documents and meetings, this Court has noted that "[i]t would be difficult to thoroughly cover such subjects through interrogatories or written deposition questions. Written deposition questions are not an adequate substitute for depositions upon oral examination, at least in these circumstances." See id. at 690–91. RAC seeks similar information regarding the investigations performed by Ms. Sanders and the information known to Ms. Sanders at the time she prepared USACE's 104(e) responses, and such information could not adequately be elicited through written discovery.

A deposition of Catherine Sanders upon oral examination is thus the only means to obtain the information sought by RAC.

**2.    The Information Sought by RAC is Relevant and Non-Privileged.**

The information sought by RAC may establish that Defendant, through its counsel, acted in bad faith in conducting its investigation and responding to EPA's requests for information. If so, Defendant's bad faith would be an equitable consideration relevant to the Court's apportionment of response costs incurred at HAAF.

CERCLA directs courts to allocate the costs of cleanup between responsible parties "using such equitable factors as the court determines are appropriate," see 42 U.S.C. § 113(f)(1), and courts have consistently recognized that a party's fraudulent conduct or failure to cooperate in cleanup efforts are appropriate factors for such an allocation. See, e.g., Shapiro v. Alexanderson, 741 F. Supp. 472, 481 (S.D.N.Y. 1990) (holding that a landowner's allegedly fraudulent representation was an equitable

STLD01-1274848-6

7

consideration that would be taken into account with regard to the owner's responsibility for response costs); <u>United States v. Colorado & Eastern R.R. Co.</u>, 50 F.3d 1530, 1536 n.5 (10th Cir. 1995) (noting that "many courts look to the 'Gore Factors' … to apportion contribution claims," and identifying "the degree of cooperation by the parties with Federal, State, or local officials to prevent any harm to the public health or the environment" as one such factor).  CERCLA does not require a court to consider a particular list of factors in apportioning liability for response costs.  <u>See</u> 42 U.S.C. § 113(f)(1).  Rather, depending on the totality of the circumstances, the court may consider many factors or a few factors, or may find one factor determinative.  <u>See</u> <u>Colorado & Eastern,</u> 50 F.3d at 1536 (citing <u>Envtl. Transp. Sys., Inc. v. ENSCO, Inc.</u>, 969 F.2d 503, 509 (7th Cir. 1992)).

      The facts before this Court suggest that Ms. Sanders' investigation into USACE's liability for the contamination at HAAF and her preparation of USACE's responses to EPA's 104(e) requests for information should be given considerable weight by this Court in allocating response costs between RAC and USACE.  USACE has refused to disclose information regarding its activities at every step in this proceeding, and discovery has revealed that USACE has consistently stonewalled attempts by various state and federal agencies investigating its activities and operations at HAAF.  <u>See, e.g.</u>, Ltr. from Cheryle Micinski, Deputy Regional Counsel, United States Environmental Protection Agency Region VII, to Mary Edgar, Assistant Chief, United States Department of Justice, Environment and Natural Resources Division, Environmental Defense Section (Aug. 2, 2000) at 2 (attached to this Response as <u>Exhibit F</u>) (stating that EPA received no response to its 104(e) request seeking all factual documents underlying

a USACE report detailing the use of TCE and other chlorinated solvents at Army Airfields during the 1940s, the existence of which was acknowledged by Ann Wright of USACE's HTRW Center of Expertise); Ltr. from Carol Ann Charette, Project Manager, Kansas City District Corps of Engineers to Lloyd E. Dunlap, Chief, Assessment and Restoration Section, Kansas Department of Health and Environment (May 7, 1997) at 1 (attached to this Response as <u>Exhibit G</u>) (rejecting KDHE's suggestion that USACE commission additional studies to determine the extent of trichloroethylene usage at former Army Air Fields); Affidavit of Leo G. Henning at ¶¶7–9 (attached to this Response as <u>Exhibit H</u>) (noting that USACE has never forwarded to KDHE information regarding any studies conducted or commissioned by USACE to determine the extent of TCE use at Kansas sites during World War II, that USACE has never disclosed whether it has commissioned any reports regarding the Army's use of solvents at airfields and bases during World War II, and that USACE has never disclosed whether it has generated any document titled "Historic Use of Chlorinated Solvent" and/or "Maintenance Operations at World War II Airfields"). The information revealed in Ms. Sanders' deposition may help clarify the extent to which USACE has acted in bad faith in this proceeding, and in proceedings surrounding other similarly situated sites, which could play a considerable role in this Court's allocation of response costs.

      Furthermore, the information sought by RAC is non-privileged.  USACE summarily asserts a claim of privilege in its Motion to Quash, and does not attempt to establish the grounds for such a privilege.  <u>See</u> Motion to Quash at 7.  RAC can only assume that USACE is claiming that its investigations are protected by the attorney work product doctrine.  However, the work product doctrine is expressly limited to those

matters relating to a lawyer's mental processes developed explicitly for litigation.  See Hickman v. Taylor, 329 U.S. 495, 510–12 (1947).  Here, the information sought by RAC from Ms. Sanders relates specifically to her actions taken, not in anticipation of litigation, but in response to EPA's requests for information.  Moreover, the information sought does not relate to Ms. Sanders' mental impressions, but rather to the underlying facts surrounding USACE's investigation and responses, *e.g.*, the nature of information available to USACE when the responses were prepared, and the scope of the investigation conducted by USACE.

Even if the Court is concerned that Ms. Sanders' deposition may wander into privileged territory, permitting RAC to depose Ms. Sanders is consistent with this Court's precedent.  In Hay & Forage, for instance, the defendant alleged that the opposing counsel's submissions to the patent office contained false and misleading representations, and sought deposition testimony regarding the facts known to the opposing counsel regarding the development, construction, and operation of the product for which the plaintiff was seeking a patent.  132 F.R.D. at 689–90.  In rejecting the plaintiff's motion to quash, the court found the plaintiff's blanket assertion of attorney-client privilege and work product "premature and insufficient to quash the subpoena," and noted that "[t]he court will ordinarily decline a motion for protective order or to quash a subpoena, based on the contention that the information sought is protected by the attorney-client privilege or work product doctrine.  Instead the court requires the deponent to appear for the deposition and there raise any such objections.  Counsel then has an opportunity to explore background facts concerning the privilege, and the deponent can substantiate any objections."  Id. at 689.  In this case, RAC has similarly alleged that the opposing

counsel's submissions to EPA contained false and misleading representations, and any assertion of privilege by Defendant should similarly be held premature.  RAC should thus be permitted to depose Ms. Sanders, as any information truly entitled to such privilege can be protected through specific objections during the deposition.

### 3. The Information Sought by RAC is Crucial to RAC's Preparation of its Case.

The information that will be obtained by deposing Ms. Sanders is crucial to RAC's preparation of this case because it has the potential to establish that Ms. Sanders failed to truthfully and accurately respond to EPA's 104(e) requests for information.  Establishing this fact without deposing Ms. Sanders will be next to impossible.

Several documents obtained by RAC during discovery indicate that at the time Ms. Sanders prepared USACE's 104(e) responses, evidence had been presented to the Kansas City District Office of USACE in written reports and deposition testimony that at least suggested that USACE used hazardous substances such as TCE at HAAF.  See generally Ltr. from Lloyd E. Dunlap, Chief, Assessment and Restoration Section, Kansas Department of Health and Environment, to Mr. Leland Fuerst, Kansas City District U.S. Army Corps of Engineers (Jan. 2, 1997) (attached to this Response as Exhibit I) (enclosing KDHE's report concluding that TCE may have been used at HAAF); see also Deposition of Burt Bickerstaff (March 15, 2001) at 29:08–29:21 (attached to this Response as Exhibit J) (noting that a "vapor degreaser" was present in the sub-depot at HAAF); Commanding General, Army Air Force, Handbook of Instructions: Reconditioning of Ceramic Aircraft Spark Plugs by AAF Depots, Technical Order T.O. No. 03-5E-2 (rev. Oct. 10, 1944) at 3 (attached to this Response as Exhibit K) (referencing "Trichloroethylene, Specification No. AN-T-37" in the description of the

vapor method of degreasing operations).  Documents obtained by RAC also indicate that Ms. Sanders would have had access to this information had she performed an investigation into the Army Air Force's World War II activities.  <u>See, e.g.</u>, Deposition of Burt Bickerstaff at 2 (<u>Exhibit J</u>) (listing Joseph Novak as one of the Counsel for USACE present at Mr. Bickerstaff's deposition); Ltr. from Kevin W. Bond, District Counsel, Kansas City District Corps of Engineers to Scott Pemberton, Environmental Protection Agency Region VII (July 30, 2004) at Enclosure C p. 2 (<u>Exhibit C</u>) (identifying Catherine Sanders, Ed Kost, and Joe Novak as the persons answering EPA's 2004 104(e) request on behalf of USACE); Ltr. from Carol Ann Charette, Project Manager, Kansas City District Corps of Engineers to Lloyd E. Dunlap, Chief, Assessment and Restoration Section, Kansas Department of Health and Environment (May 7, 1997) at 2 (<u>Exhibit G</u>) (bearing Ms. Sanders' signature indicating her review and approval of the letter, which responded to KDHE's recommendation that USACE perform an additional investigation into its TCE use).

Taking Ms. Sanders' deposition to determine what Ms. Sanders knew and did in responding to the 104(e) requests is crucial in this case.  USACE, like any private party, should be held responsible if it failed to fully cooperate with EPA.  EPA has the authority to subject "any person" who unreasonably fails to comply with Section 104(e) to significant civil and criminal penalties, <u>see</u> 42 U.S.C. § 9604(e)(5)(B), and has imposed such penalties on private parties in a number of cases.  <u>See, e.g.</u> <u>United States v. Barkman</u>, 784 F. Supp. 1181, 1190 (E.D. Pa. 1992) (fining a landfill operator $38,000.00 for submitting a tardy and incomplete 104(e) response); <u>United States v. Martin</u>, 2000 WL 1029188 *10 (N.D. Ill. 2000) (holding that a landowner was liable for a fine of $75

per day for each day that the landowner's 104(e) response was delayed and incomplete, to be raised to $1,000 per day if the landowner did not fully respond within 14 days); United States v. Gurley, 384 F.3d 316, 326 (6th Cir. 2004) (holding a landfill operator liable for a civil penalty of $1,908,000.00 when the operator both delayed responding to a 104(e) request and refused to comply with it fully); United States v. W.R. Grace, 2006 WL 2472980 at *12 (D. Mont. Aug. 24, 2006) (noting that defendants were indicted for obstructing justice in violation of 18 U.S.C. §§ 1505 and 1515(b) by providing false and misleading information in response to a 104(e) request).

      If USACE were a private party, it would be subject to civil or even criminal penalties for failing to respond in good faith to EPA's 104(e) requests.  However, although USACE may be no less culpable than the parties penalized in the cases cited here, RAC is not aware of any circumstance in which EPA has imposed such penalties on USACE or any other federal governmental agency.  Moreover, EPA cannot file an enforcement action against USACE like those cited above, and USACE has in the past taken the position in its 104(e) responses that USACE's responses are provided to EPA only "as a matter of comity," see Ltr. from Catherine R. Sanders, Assistant District Counsel, Kansas City District Corps of Engineers, to David A. Hoefer, Office of Regional Counsel, US EPA Region VII (Dec. 22, 1997) at 1 (Exhibit A), so any attempt by EPA to impose a penalty for USACE's failure to adequately respond to EPA's 104(e) requests will likely be met with considerable resistance. By determining in this proceeding whether USACE was less than forthcoming in its 104(e) responses, this Court may ensure that USACE does escape the consequences of such actions by giving this equitable factor due consideration in its allocation of response costs.

Finally, the information sought from Ms. Sanders may establish USACE's culpability for contamination at numerous former military subdepots and other contaminated sites throughout United States and ensure that the response costs for the contamination at HAAF and other sites are borne by the appropriate parties.  By shielding individuals like Ms. Sanders, USACE effectively exculpates itself of liability for contamination caused at all such sites.  However, as several courts have observed, the cost of the United States' war effort should be borne by the American public as a whole rather than by private corporations.  See, e.g., FMC Corp v. U.S. Dep't of Commerce, 29 F.3d 833, 849 (3d Cir. 1994) (noting that placing "a cost of war on the United States, and thus on society as a whole, [constitutes] a result which is neither untoward nor inconsistent with the policy underlying CERCLA"); United States v. Shell Oil Co., 294 F.3d 1045, 1060 (9th Cir. 2002) (noting that "the cleanup costs are properly seen as part of the war effort for which the American public as a whole should pay"); Cadillac Fairview/California, Inc. v. Dow Chem. Co., 299 F.3d 1019, 1029 (9th Cir. 2002) (noting that "[t]his is the third World War II case of which we are aware, in the Circuit Courts, in which the government has lost its claim against its servants in the war effort," and noting that "[w]e have no difficulty affirming the district court's exercise of discretion not to impose liability [on a private corporation] in the too-analogous circumstances of this case. We would only have difficulty in a case that went the other way").

## CONCLUSION

RAC has met its burden to establish that deposing Catherine Sanders is both necessary and appropriate under these circumstances.  Defendant has failed to establish any reason why this Court should prohibit RAC from deposing Ms. Sanders.  On the

contrary, Ms. Sanders' actions in investigating and preparing USACE's responses may critically support RAC's position on apportionment of response costs associated with the contamination at HAAF. The information sought is not privileged, and permitting RAC to depose Ms. Sanders will be consistent with cases previously decided by this Court. Finally, deposing Ms. Sanders is crucial to Raytheon's preparation of its case because it may provide the Court with a basis to hold USACE to the same standard as any private individual or corporation.

                                  Respectfully submitted,

                                  s/ Beverlee J. Roper

| | |
|---|---|
| Beverlee J. Roper | KS #77969 |
| Stephen J. Torline | KS #18292 |
| Daryl G. Ward | KS #20181 |

BLACKWELL SANDERS PEPER MARTIN LLP
4801 Main Street, Suite 1000
Kansas City, Missouri 64112
Telephone: (816) 983-8000
Facsimile: (816) 983-8080

Attorneys for Plaintiff Raytheon Aircraft Company

## **CERTIFICATE OF SERVICE**

      I hereby certify that on November 30, 2006, I electronically filed the foregoing with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to the following:

Lois Godfrey Wye, Esq.
Natalia Sorgente, Esq.
Scott J. Jordan
Department of Justice
P.O. Box 23986
Washington, D.C. 20026-3986

                                                                         s/ Beverlee G. Roper