IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**RAYTHEON AIRCRAFT CO.,**

        **Plaintiff,**

**v.**

        **CIVIL ACTION**

        **No. 05-2328-JWL-DJW**

**UNITED STATES OF AMERICA,**

        **Defendant.**

**MEMORANDUM AND ORDER**

Plaintiff Raytheon Aircraft Company brings this action under the Comprehensive Environmental Response Compensation Liability Act ("CERCLA") seeking contribution from the United States Army Corps of Engineers ("USACE") for environmental cleanup costs of trichloroethylene contamination at the former Herington Army Air Field ("HAAF"). Raytheon seeks to recover from the USACE all or a portion of the costs that Raytheon has incurred performing work required by Administrative Orders on Consent issued by the Environmental Protection Agency ("EPA") and Kansas Department of Health and Environment and in response to an Unilateral Administrative Order. The matter is presently before the Court on Defendant's Motion to Quash Deposition of Attorney Catherine Sanders (doc. 108). As discussed below, the motion is denied.

**I.**  **Background**

CERCLA provides EPA with the authority to gather information by issuing interrogatory-like requests (often referred to as "104(e) requests") to "potentially responsible parties" ("PRPs").[1] EPA requires PRPs to certify truthful responses to such inquiries as the PRP's

---

[1] *See* 42 U.S.C. § 9604(e).

activities conducted at certain sites, the use of hazardous substances, and the toxicity and volumetric share of such substances. Failure to timely provide a response, or to provide accurate and complete information in that response, subjects the recipient of the 104(e) request to liability for civil and criminal penalties.

On December 22, 1997, attorney Catherine Sanders signed a letter that accompanied the USACE's response to an EPA 104(e) information request for HAAF. The October 31, 1997 EPA information request asked the USACE the following with regard to HAAF:

> Did Respondents use, store, dispose of, or otherwise handle any hazardous substances/hazardous waste, including volatile organic compounds, in its operations at the site[?] If so, identify all the hazardous wastes used.
>
> Does Respondent have in its custody or control any records or documents evidencing or suggesting the use or disposal 1 of any hazardous substances/hazardous wastes at the Site? If so, submit copies of such records or documents to EPA along with your repossess to this information request.

The USACE's response to these requests, prepared by Ms. Sanders, was that "[t]here is no evidence to indicate that the operations of [HAAF] included the use of hazardous substances/hazardous wastes."

## II. Nature of the Present Discovery Dispute

On November 8, 2006, Plaintiff served a notice of deposition, which set the deposition of Defendant's counsel, Catherine Sanders, on November 29, 2006.[2] Plaintiff claims that it seeks to depose Ms. Sanders regarding the investigation conducted by USACE following EPA's information request under CERCLA § 104(e), and the information known to USACE at the time it responded to EPA's 104(e) request.

---

[2]*See* Notice to Take Deposition Duces Tecum (doc. 100).

Upon receipt of the deposition notice, Defendant filed the instant motion to quash the notice of deposition. Defendant requests an order quashing Ms. Sanders' deposition on the grounds that Plaintiff has not met the criteria stated in *Simmons Foods, Inc. v. Willis*[3] for taking the deposition of an opposing party's attorney.

### III.    Law Regarding Depositions of Opposing Counsel

Federal Rule of Civil Procedure 30(a) provides that "[a] party may take the testimony of any person . . . by deposition upon oral examination without leave of court except as provided in paragraph (2)."[4] While the Federal Rules do not prohibit depositions of opposing counsel, courts have imposed certain restrictions on these depositions. In *Simmons*,[5] the court discussed in depth the standard for determining when the deposition of an opposing party's attorney should be allowed. The court first summarized the general rules regarding such depositions:

> An attorney, even an attorney for a party to the suit, is subject to being deposed. Courts do not favor thwarting a deposition. Barring extraordinary circumstances, courts rarely will grant a protective order which totally prohibits a deposition. A request to take the deposition of an attorney for a party may, however, constitute an extraordinary circumstance justifying departure from the normal rule. While the Federal Rules do not prohibit the deposition of an attorney for a party, experience teaches that countenancing unbridled depositions of attorneys often invites delay, disruption of the case, harassment, and unnecessary distractions into collateral matters.[6]

Noting that neither the Tenth Circuit nor the District of Kansas had adopted a definitive test to determine when it is appropriate for a court to grant a protective order prohibiting the deposition

---

[3] 191 F.R.D. 625, 630 (D. Kan. 2000).

[4] Fed. R. Civ. P. 30(a)(1).

[5] *Simmons,* 191 F.R.D. at 630.

[6] *Id*. (internal citations omitted).

of a party's attorney, the *Simmons* court applied the criteria set forth in the Eighth Circuit Court of Appeals case, *Shelton v. American Motors Corp.*[7] Under the *Sheldon* criteria, depositions of "opposing counsel" should be limited to those circumstances where the party seeking to take the deposition has shown the following:

> (1) no other means exist to obtain the information except to depose opposing counsel; (2) the information sought is relevant and nonprivileged; and (3) the information is crucial to the preparation of the case.[8]

In the District of Kansas, this criteria has become known as the *Simmons* criteria and it is used as the standard for determining whether to permit a party to depose opposing counsel.[9] The party seeking the attorney's deposition has the burden to establish that each of these three criteria is met.[10]

**IV.     Has Plaintiff satisfied the *Simmons* criteria?**

Plaintiff does not dispute that Ms. Sanders should be considered "opposing counsel" for purposes of applying the *Simmons* criteria. Instead, it asserts that it has met its burden to establish all three *Simmons* criteria are satisfied for the request to depose Ms. Sanders.

**A.     Whether other means exist to obtain the information**

---

[7] 805 F. 2d 1323, 1326 (8th Cir. 1986).

[8] *Simmons,* 191 F.R.D. at 630 (citing *Shelton,* 805 F. 2d at 1326).

[9] *See Rahn v. Junction City Foundry, Inc.*, ,No. Civ. A. 00-2128-KHV, 2000 WL 1679419, at *1 (D. Kan. Nov. 3, 2000) (citing and applying *Simmons* in determining whether to grant a motion to quash a deposition of opposing counsel); *Youell v. Grimes*, No. 00-2207-JWL, 2001 WL 1273260, at *4 (D. Kan. Apr. 13, 2001) (instructing parties to apply the *Simmons* analysis to issue of deposing opposing counsel); *Peppers v. United States Central Credit Union*, No. Civ. A. 00-2497-CM, 2001 WL 1155296, at *1 (D. Kan. Sept. 17, 2001) (quashing a notice of deposition after determining that the party seeking to take the deposition of opposing counsel had not satisfied the *Simmons* criteria); *Horizon Holdings, L.L.C. v. Genmar Holdings, Inc.*, No. 01-2193-JWL, 2002 WL 1822404, at *2-3 (D. Kan. June 13, 2002) (applying the *Simmons* criteria to determine whether to grant a motion to quash the notice of deposition issued to opposing counsel).

[10] *Simmons,* 191 F.R.D. at 630 (citing *Shelton,* 805 F. 2d at 1326).

The first *Simmons* criterion a party seeking to depose opposing counsel must establish is that "no other means exist to obtain the information except to depose opposing counsel."[11] The *Simmons* court, relying on *Hay & Forage Industries v. Ford New Holland*,[12] found this criterion to mean that the party seeking to depose counsel must show that the information it seeks through counsel's deposition "is the only reasonably practical means available for obtaining the information"[13] Subsequent decisions of this court, however, indicate that the party seeking to depose opposing counsel must show that the information it seeks through counsel's deposition "is not available from any other source."[14]

Plaintiff argues that deposing Ms. Sanders is necessary because she is the only person with first-hand knowledge regarding USACE's investigation into activities at HAAF prior to the submission of USACE's 104(e) response to EPA in 1997. According to Plaintiff, the information sought cannot be obtained by deposing any other witness. In support of its request to depose Ms. Sanders, Plaintiff cites to six deposition excerpts from the deposition of USACE employee, Ed Kost. During his deposition, Mr. Kost consistently deferred to Ms. Sanders as "the best person to ask about the responses." Mr. Kost also indicated that no one other than Ms. Sanders was involved in the preparation of USACE's 1997 104(e) response. Plaintiff also references the depositions of two other USACE employees, Stan Bauer and Joseph Novak, who denied any significant involvement in the preparation of the USACE's 1997 104(e) response. Plaintiff further states that both Mr. Kost

---

[11]*Simmons*, 191 F.R.D. at 630.

[12]132 F.R.D. 687, 690 (D. Kan. 1990).

[13]*Id.* at 631 (citing *Hay & Forage*,132 F.R.D. at 690).

[14]*Horizon Holdings,* 2002 WL 1822404, at *4 (citing *Simmons*, 191 F.R.D. at 631).

5

and Mr. Bauer relied on the 104(e) response prepared by Ms. Sanders in preparing for their deposition testimony.

Defendant argues that three of the six deposition excerpts cited by Plaintiff do not identify any particular information that Mr. Kost did not know, but simply contain testimony by Mr. Kost that (1) Ms. Sanders was "the best person to ask about the responses," (2) he was not involved in the 1997 investigation and response, and that was handled by Ms. Sanders; and (3) Ms. Sanders wrote most of the answers for USACE's 2004 104(e) response. It maintains that these excerpts, however, do not identify any information that was not available to Plaintiff through the documents or USACE witnesses (including Mr. Kost's 30(b)(6) testimony on the topics of USACE's investigation and 104(e) responses), and do not indicate why Ms. Sanders' deposition is necessary.

In applying the *Simmons* criterion to this dispute, i.e., whether Plaintiff has shown that no other means exist to obtain the information except to depose opposing counsel,[15] the Court considers whether Plaintiff has identified information that "is not available from any other source."[16]

Plaintiff indicates that it seeks information from Ms. Sanders on the topic of whether the USACE ever amended its 1997 response to EPA regarding the presence of TCE at HAAF given the later inconsistent testimony of veterans previously stationed at HAAF, who testified to the use and presence of TCE at HAAF. In response, Defendant argues that documents Plaintiff already possesses reveal that Defendant never amended its 1997 responses, even after receipt of the depositions in question. Defendant does not, however, adequately refute Plaintiff's argument that

---

[15] *Simmons*, 191 F.R.D. at 630.

[16] *Horizon Holdings,* 2002 WL 1822404, at *4 (citing *Simmons*, 191 F.R.D. at 631).

no source other than Ms. Sanders may explain why the USACE never amended its 1997 response to EPA. Thus, the Court finds that the first *Simmons* criterion is satisfied for this line of inquiry.

Second, Plaintiff seeks to depose Ms. Sanders regarding the date upon which she received a certain document, referred to as "Technical Order 03-5E-2." Although the precise nature of the document is not known to the Court, it is apparent that the document contains information regarding the possible presence of TCE at HAAF between 1942 and 1946. In response to inquiries by Plaintiff, a deponent testified that he did not know when Defendant received the document, but that Ms. Sanders might. Defendant argues that this admission is without value or meaning, given that the deponent first indicated that he did not know the answer to the question; however, when pressed, the deponent did, at the conclusion of the line of questioning, reply that Ms. Sanders might know the answer. Plaintiff has not succeeded in obtaining this information from other sources. Defendant argues that the reasonable conclusion from reading the transcript of the exchange between Plaintiff's counsel and the deponent is that there is no likelihood that Ms. Sanders or anyone else knows when Defendant received Technical Order 03-5E-2." The Court disagrees. The deponent indicated at the conclusion of the line of questioning that Ms. Sanders might be able to provide the information sought. The Court finds that the first *Simmons* criterion is satisfied in this instance as well.

Plaintiff also seeks to depose Ms. Sanders regarding whether she commented upon a document related to the USACE's investigation of TCE use at HAAF. Though Defendant disputes that the elements of cruciality and relevance are satisfied in this instance, it does not deny that Ms. Sanders appears to be the only party capable of answering this question. Therefore, the first *Simmons* criterion is satisfied here as well.

In conclusion, Plaintiff has demonstrated that it unsuccessfully attempted to pursue these lines of inquiry through other deponents; therefore, Plaintiff has carried its burden under the first *Simmons* criterion by establishing that it is unable to satisfactorily pursue these lines of inquiry with any other source. Accordingly, the Court will proceed with the *Simmons* analysis by determining whether the information Plaintiff seeks to obtain from Ms. Sanders is relevant and non-privileged.

**B.     Whether the information sought is relevant and non-privileged**

The second *Simmons* criterion the Court should consider in determining whether to allow the deposition of opposing counsel is whether the information that Plaintiff seeks to obtain is both relevant and non-privileged.[17]

**1.     Relevance**

Evidence is relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."[18] Plaintiff asserts that its purpose in deposing Ms. Sanders is to inquire regarding her knowledge at the time she prepared USACE's response to EPA's inquiries regarding TCE use at HAAF. Plaintiff argues that this information is relevant toward showing an equitable factor, such as intentional misrepresentation, which may have influenced EPA's allocation of the cleanup costs for the TCE contamination at HAAF.[19] Plaintiff states in its brief in opposition to the motion that Ms. Sanders' response to EPA, based on the information in her possession at the time

---

[17]*Simmons*, 191 F.R.D. at 630.

[18]Fed. R. Evid. 401.

[19]42 U.S.C. § 9613(f)(1) ("In resolving contribution claims, the court may allocate response costs among liable parties using such equitable factors as the court determines are appropriate.")

she prepared them, were "at best unresearched and incomplete, and possibly even deliberately untrue." Only by determining what information Ms. Sanders had in her possession at the time can Plaintiff develop this fact.

The Court finds that information as to Ms. Sanders' knowledge at the time when the USACE's response to EPA were prepared is relevant toward Plaintiff's claim that those responses were not adequately researched or were intentionally deceptive. Plaintiff alleges that the USACE's response to EPA that there was no evidence to indicate that the operations at HAAF included the use of hazardous substances is inconsistent with evidence suggesting the use and presence of TCE at HAAF during the time period 1942 to 1946. Inquiry into Ms. Sanders' knowledge of the USACE's denial is relevant to whether the USACE's responses were intentionally or recklessly misleading, an equitable factor that may have a direct bearing on the ultimate issue in this case.

### 2. Privilege

Plaintiff assures the Court that it will not pursue privileged information, but rather seeks to learn "the underlying facts surrounding USACE's investigation and responses; e.g., the nature of the information available to USACE when the responses were prepared, and the scope of the investigation conducted by USACE." Plaintiff indicates that it will not inquire into the "mental impressions" of Ms. Sanders. The Court understands Plaintiff's representation that it will not inquire into Ms. Sanders' "mental impressions" to mean that it will not seek privileged information protected by the work product doctrine. Plaintiff has met its burden under the second *Simmons* criterion.

## C. Whether the information is crucial to the preparation of Plaintiff's case

The third and final step of the *Simmons* analysis requires the Court to determine whether each of the three lines of inquiry Plaintiff seeks to pursue in its deposition of Ms. Sanders is crucial to the preparation of Plaintiff's case. The court examined the third *Simmons* criterion in *Rahn v. Junction City Foundry*, *Inc.*[20]   The court held that a deposition of opposing counsel was crucial because it would allow the deposing party to determine the extent of certain investigations undertaken by the deponent.[21]   The court also held in *Rahn* that information necessary to rebut a defense of the opposing party was "crucial."[22]

Defendant denies that the information Plaintiff purports to acquire from Ms. Sanders' deposition is crucial, and asserts that Plaintiff has failed to carry its burden in establishing that this element is satisfied.  The Court disagrees.  In this case, the Court finds that Plaintiff has demonstrated that the information it seeks from Ms. Sanders' deposition is crucial to its preparation of its case.  In *Rahn*, the court permitted the plaintiff to depose opposing counsel when the information plaintiff sought could be used to undermine a required element of the defendant's affirmative defense.  Similarly, in the instant case, the information in Ms. Sanders' possession at the time she prepared the USACE's responses to EPA is probative of whether those responses were recklessly or intentionally false.  Plaintiff has explained that it will attempt to develop this issue as an equitable factor that could have led some of the cleanup costs originally allocated to Plaintiff to

---

[20]No. Civ. A. 00-2128-KHV, 2000 WL 1679419, at *1 (D. Kan. Nov. 3, 2000).

[21]*Id.* at 3.

[22] *Id.*

be allocated instead to Defendant.  The information Plaintiff seeks is central to its case, and its relative importance is at least that of the information the plaintiff sought in *Rahn.*

### D.  Summary

Plaintiff has identified three areas of inquiry that it wishes to pursue in its deposition of Defendant's counsel, Ms. Sanders.  In each instance, Plaintiff has carried its burden under *Simmons* by establishing that the information it seeks 1) is not available from any other source, 2) is relevant and non-privileged, and 3) is crucial to Plaintiff's preparation of its case.  The Court therefore finds that Defendant's motion to quash the deposition of Ms. Sanders should be denied.

**IT IS THEREFORE ORDERED THAT** Defendant's Motion to Quash the Deposition of Attorney Catherine Sanders is denied, as set forth herein.  The parties shall confer regarding the rescheduling of the deposition of Ms. Sanders and a mutually agreeable date **within the next 30 (thirty) days**.

IT IS SO ORDERED.

Dated in Kansas City, Kansas on this 13th day of April, 2007.

s/ David J. Waxse
David J. Waxse
United States Magistrate Judge

cc:   All counsel