# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Raytheon Aircraft Company,**

    **Plaintiff,**

v.                                                    **Case No. 05-2328-JWL**

**United States of America,**

    **Defendant.**

## MEMORANDUM AND ORDER

This is an environmental case filed under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., concerning contamination at the Tri-County Public Airport Site in Herington, Kansas.  Plaintiff Raytheon Aircraft Company alleges claims against the United States (based on the Army Corps of Engineers status as an alleged co-PRP at the Site) for cost recovery under section 107(a) of CERCLA and for contribution under sections 107(a) and 113(f) of CERCLA.  The United States alleges counterclaims against Raytheon for cost recovery under sections 107(a)(2) and 107(a)(4)(A) of CERCLA (based on costs incurred by the Environmental Protection Agency) and for contribution under section 113(f) of CERCLA.

This matter is presently before the court on two motions relating to the United States' counterclaim against Raytheon for cost recovery under section 107(a)–Raytheon's motion to strike that counterclaim (doc. 236) on the grounds of untimeliness, undue delay and prejudice and the United States' motion to bifurcate the issue of costs raised by its counterclaim (doc. 245).  As will be explained, the court, finding that the statutory framework of CERCLA requires

that the United States' counterclaim be treated as if it were permissive, denies the motion to strike and grants the motion to bifurcate.

*Procedural History and Overview of Arguments*

In its initial complaint, Raytheon asserted a claim for cost recovery pursuant to section 107(a) against the United States based on allegations that the Army Corps of Engineers was liable for contamination at the Site.  In May 2006, the court granted the United States' motion to dismiss this claim in light of Tenth Circuit precedent precluding a  potentially responsible party (PRP) from asserting a claim for cost recovery under section 107(a).  In June 2007, the Supreme Court issued its decision in *United States v. Atlantic Research Corp*., 127 S. Ct. 2331 (2007), in which the Court held that a PRP may assert a claim for cost recovery under section 107(a), thereby superseding the Circuit precedent upon which this court relied in dismissing Raytheon's claim.  After *Atlantic Research*, Raytheon moved the court to reconsider its May 2006 order and to reinstate Raytheon's section 107(a) cost recovery claim.  In July 2007, the court reinstated Raytheon's cost recovery claim and directed the United States to file a responsive pleading within 30 days.  Thereafter, the United States filed a First Amended Answer and included, for the first time, a section 107(a) cost recovery counterclaim against Raytheon for costs incurred by the EPA for activities including environmental investigations at the Site and preparation and issuance to Raytheon of an Administrative Order on Consent and a Unilateral Administrative Order.

Raytheon moves to strike the counterclaim on the grounds that the counterclaim is not

within the scope of Raytheon's reinstated cost recovery claim, that all pertinent deadlines for amending pleadings have passed and the government cannot meet the standards for amendment set forth in Federal Rules of Civil Procedure 13(f) and 15(a).  Specifically, Raytheon contends that the counterclaim is untimely, is the result of undue delay and that to permit the counterclaim at this stage would be prejudicial because of the need for additional discovery and the requisite delayed trial date.  In its initial briefing, Raytheon does not take a stance on whether the counterclaim is permissive or compulsory, but argues that to the extent the government contends the counterclaim is compulsory, that should not override the facts concerning undue delay and prejudice.

In response, the government contends that its counterclaim is "within the scope" of Raytheon's reinstated cost recovery claim such that it was entirely appropriate to assert the claim in response to it.  The government also contends that its counterclaim is permissive, but states that the court need not resolve the issue because the counterclaim is within the scope of Raytheon's reinstated claim in any event.  Recognizing the merits of Raytheon's concerns about the upcoming trial date and the need for additional discovery, the United States also moves to bifurcate the issue of the amount of costs the EPA has incurred (and that the United States is entitled to recover) in response to releases of hazardous substances at the Site and to permit the parties to litigate that issue and to permit trial on all other issues and claims to proceed without delay.[1]  Raytheon opposes bifurcation on the grounds that the counterclaim should be stricken

---

[1] It is not disputed by the parties that the other primary issue raised by the United States' counterclaim–whether Raytheon is jointly and severally liable under section 107(a)(2)

as asserted in its motion to strike and on the grounds that bifurcation would waste resources of the parties, squander the court's time, inconvenience witnesses, require duplication of effort and make settlement far less likely. In the initial round of briefing, however, Raytheon did not challenge the government's arguments regarding the permissive nature of the counterclaim.

After reviewing the parties' briefs, the court concluded that the threshold (and, potentially, dispositive) issue in resolving the parties' motions is whether the United States' counterclaim is deemed permissive or compulsory. For if the counterclaim is deemed permissive, then striking the counterclaim would make little practical sense as the government would be permitted to file a new lawsuit asserting the claim and the claim would be tried separately; thus, going through the ritual of striking the claim would only waste the time of the court and the parties. *See Garmin Ltd. v. TomTom, Inc*., 2006 WL 3377487, at *1 (W.D. Wis. June 15, 2006) (declining to dismiss permissive counterclaim where dismissal would be without prejudice and party could simply file new lawsuit). If, on the other hand, the counterclaim is deemed compulsory, then the court must analyze whether the counterclaim is within the scope of Raytheon's reinstated cost recovery claim and, if not, whether the compulsory nature of the claim outweighs the untimeliness of the claim and the prejudice alleged by Raytheon. In any event, because the parties' briefs were inadequate with respect to this issue, the court held a telephone conference on November 15, 2007 to ascertain the parties' respective positions

---

on the grounds that its predecessor Beech owned or operated a facility from which a hazardous substance has been released or at which a hazardous substance has been disposed of–can and should be resolved at the January 2008 trial because the same evidence will be presented in connection with the parties' claims for contribution.

4

concerning the permissive or compulsory nature of the claim. At that time, Raytheon took the position that it believes the counterclaim is compulsory and the United States indicated a desire to further explain its belief that the counterclaim is permissive. The court, then, directed the parties to file supplemental briefs to flesh out this issue. That briefing is now complete and the motions are ripe for resolution.

*Analysis of Motions*

Within the context of the Federal Rules of Civil Procedure, compulsory counterclaims are governed by Rule 13(a) and the Tenth Circuit has set forth a four-part test to determine whether a counterclaim is compulsory under Rule 13(a). *See, e.g., Berrey v. Asarco Inc.*, 439 F.3d 636, 645 (10th Cir. 2006). Raytheon contends that numerous courts and parties have accepted without discussion that CERCLA counterclaims between PRPs at a Site are compulsory under Rule 13(a). The court assumes without deciding that if the United States were asserting a cost recovery counterclaim for the first time at this late stage as a co-PRP, then a Rule 13(a) analysis would result in a finding that the claim is compulsory. In this case, however, the United States is not asserting a counterclaim in its capacity as a co-PRP; it is asserting a counterclaim in its capacity as the EPA. The distinction is critical because the CERCLA statutory scheme specifically provides the EPA with broad discretion concerning the timing of bringing a cost recovery action against a PRP such that it supersedes the more general Federal Rule concerning compulsory counterclaims. As will be explained, when viewed through the lens of the CERCLA framework, the EPA's counterclaim in this case necessarily must be viewed as if it were

5

permissive.  The court, then, declines to strike the counterclaim because the United States would be free to reassert that claim in a separate action in any event.  To alleviate any prejudice to Raytheon, the court will also grant the United States' motion to bifurcate with the caveat that Raytheon may move the court to continue the trial setting in favor of one trial at a later date and the court will be amenable to granting that relief.

While there is no dispute that Congress has the plenary power to statutorily supersede any or all of the Federal Rules of Civil Procedure, the court acknowledges that "unless the congressional intent to do so clearly appears, subsequently enacted statutes ought to be construed to harmonize with the Rules, if feasible." *United States v. Gustin-Bacon Div., Certainteed Prods. Corp.*, 426 F.2d 539, 542-43 (10th Cir. 1970).  After reviewing the statutory language and legislative history of CERCLA, the court concludes that Congress clearly intended to give the EPA broad discretion to determine the timing of filing a claim for cost recovery.  Specifically, CERCLA sections 113(h) and 113(g)(2), taken together, encourage the EPA to wait until its cleanup activities are complete before filing a cost recovery action and ensure that the EPA will not have to litigate a cost recovery action until, if it so desires, years after the completion of a removal action.  Because Congress has drafted specific provisions concerning the timing of filing such actions, those provisions trump the more general Federal Rule governing compulsory counterclaims.  In resolving the pending motions, then, the court declines to apply Rule 13(a) cases to the unique facts of this case and applies instead the provisions of CERCLA reflecting the EPA's wide discretion to determine the timing of filing a cost recovery action.

The court, turns, then to CERCLA section 113(h) which provides, with certain

6

enumerated exceptions, "that no federal court shall have jurisdiction to review any challenges to removal or remedial action selected by the EPA under §§ 9604 or 9606(a)." *United States v. City & County of Denver*, 100 F.3d 1509, 1513-14 (10th Cir. 1996). Federal courts, including the Tenth Circuit, have consistently interpreted this provision as denying federal courts jurisdiction over claims asserted by potentially responsible parties concerning ongoing removal or remedial activities. *See New Mexico v. General Elec. Co.*, 467 F.3d 1223, 1249 (10th Cir. 2006) (section 113(h) "protects the execution of a CERCLA plan during its pendency from lawsuits that might interfere with the expeditious cleanup effort"); *Broward Gardens Tenants Ass'n v. U.S. E.P.A.*, 311 F.3d 1066, 1072 (11th Cir. 2002) (collecting cases). The rationale underlying this interpretation is that the claim has the effect of slowing down or preventing cleanup activities and, thus, constitutes a "challenge" to the cleanup. *See Broward Gardens*, 311 F.3d at 1072 ("A suit challenges a remedial action within the meaning of section 113(h) if it interferes with the implementation of a CERCLA remedy. . . . [A] suit interferes with, and thus challenges, a cleanup, . . if the relief requested will impact the remedial action selected."); *United States v. State of Colorado*, 990 F.2d 1565, 1576 (10th Cir. 1993) (section 113(h) was enacted "to prevent private responsible parties from filing dilatory, interim lawsuits which have the effect of slowing down or preventing the EPA's cleanup activities") (quotation omitted).

The practical and intended effect of section 113(h) is to provide the EPA with substantial discretion to determine the timing of a cost recovery action. *See Hanford Downwinders Coalition, Inc. v. Dowdle*, 841 F. Supp. 1050, 1060 (E.D. Wash. 1993). As reflected in the legislative history of section 113(h), the provision precludes a PRP from challenging the EPA's

7

response actions until those actions are completed but also permits a PRP to challenge those actions once the EPA has filed a cost-recovery action under section 107(a). *See United States v. NL Indus., Inc.*, 936 F. Supp. 545, 550-51 (S.D. Ill. 1996) (citing committee reports). Taken together, the committee reports reflect a presumption by Congress that the EPA would not bring a cost recovery action until after the removal or remedial action is complete. *Id*. at 551 (citing various passages in the legislative history reflecting a "presumption" that the government would not bring a cost recovery action until after the removal or remedial action is complete and the "apparent expectation" that the government would not seek reimbursement costs until after completion of response actions); *accord* H.R. Rep. No. 99-253(I), 99th Cong., 2d Sess., *reprinted in* 1986 U.S.C.C.A.N. 2835, 2941 (section 113(h) limits court challenges "to the point in time when the agency has decided to enforce the liability" of PRPs).

The statutory framework of CERCLA, then, not only encourages the EPA to delay filing a cost recovery action until its clean up activities are complete but also presumes that the EPA will in fact delay the filing of a cost recovery action to ensure efficient cleanup. By precluding PRPs from challenging the EPA until the EPA's response actions are complete or until the EPA decides to bring a cost recovery action, CERCLA ensures that EPA will not have to defend itself until that time. In this case, if the court were to treat EPA's cost-recovery counterclaim as compulsory to Raytheon's claims against the Army, then it would permit Raytheon to lift prematurely the bar on pre-enforcement review established by section 113(h) and it would allow Raytheon to dictate when the EPA had to bring an action for cost recovery regardless of whether cleanup was complete. Such a result would effectively render section 113(h) a nullity in those

cases where the plaintiff sues another agency of the federal government as a co-PRP and eviscerate Congress' intent.

Section 113(g)(2) of CERCLA also reflects that Congress designed the statute to afford wide discretion to the EPA in carrying out the statute.  Under this provision, the EPA must bring an action to recover costs within three years "after the completion of the removal action" or, with respect to a remedial action, "within 6 years after initiation of physical on-site construction of the remedial action."  42 U.S.C. § 9613(g)(2)(A) & (B).  As recognized by both the First and Fifth Circuits, section 113(g)(2) gives the EPA broad discretion in determining when a cost recovery suit should be filed.  *See Reardon v. United States*, 947 F.2d 1509, 1519 (1st Cir. 1991) (EPA's discretion with respect to timing of cost recovery action is limited only by statute of limitations set forth in section 113(g)(2)); *Voluntary Purchasing Groups, Inc. v. Reilly*, 889 F.2d 1380, 1390 n.22 (5th Cir. 1989) (section 113(g)(2) provides government flexibility to determine when to file cost recovery action).  Indeed, the running of the statute of limitations itself is within the control of the government because the EPA determines when the removal action is complete and when to initiate the remedial action.  *Reardon*, 947 F.2d at 1519.  Thus, the statutory framework of CERCLA ensures that EPA "may take its own sweet time" before pursuing a cost recovery action.  *Id*.  To hold, as Raytheon urges, that a cost recovery action must be asserted by the EPA as a counterclaim in a suit where one PRP sues another agency of the government as a co-PRP would force the EPA to operate on the timetable of the PRP–a result that clearly conflicts with the objectives of CERCLA and the intent of Congress in drafting CERCLA.  *See Reilly*, 889 F.2d at 1390 & n.22 (forcing EPA to litigate on PRP's schedule is "against the wishes

of Congress" and would require EPA to allocate time and money to litigation rather than clean up efforts).

For the foregoing reasons, the court declines to strike the United States' counterclaim and grants the United States' motion to bifurcate the issue of costs raised by that counterclaim. Nonetheless, because Raytheon has expressed in its papers a desire to continue the trial setting in favor of one trial over bifurcation, the court will permit Raytheon to file a motion to continue the trial setting and is amenable to granting that relief.  In the meantime, the court will re-refer this case to the magistrate judge for the purpose of scheduling the bifurcated proceeding.


**IT IS THEREFORE ORDERED BY THE COURT THAT** Raytheon's motion to strike the United States' counterclaim (doc. 236) is **denied** and the United States' motion to bifurcate the issue of costs raised by its counterclaim (doc. 245) is **granted.** The court re-refers this case to the magistrate judge for the purpose of scheduling the bifurcated proceeding.


**IT IS SO ORDERED.**


Dated this __30th____ day of November, 2007, at Kansas City, Kansas.



 s/ John. W. Lungstrum_____
John W. Lungstrum
United States District Judge

10

11