IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

**Raytheon Aircraft Company,**

    **Plaintiff,**

v.                                                        **Case No. 05-2328-JWL**

**United States of America,**

    **Defendant.**

## MEMORANDUM AND ORDER

This is an environmental case filed under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., concerning contamination at the Tri-County Public Airport Site in Herington, Kansas. Plaintiff Raytheon Aircraft Company alleges claims against the United States (based on the Army Corps of Engineers status as an alleged co-PRP at the Site) for cost recovery under section 107(a) of CERCLA and for contribution under sections 107(a) and 113(f) of CERCLA. The United States alleges counterclaims against Raytheon for cost recovery under sections 107(a)(2) and 107(a)(4)(A) of CERCLA (based on costs incurred by the Environmental Protection Agency) and for contribution under section 113(f) of CERCLA.

This matter is presently before the court on five motions that relate to a single, overarching issue–whether Raytheon is precluded from recovering as costs those amounts which it has already received from its insurers through insurance settlement agreements and/or through government contracts that included a percentage of Site environmental costs as an overhead charge. In the first motion, Raytheon moves to strike an affirmative defense of the United

States' first amended answer (doc. 238) that seeks to preclude Raytheon, pursuant to CERCLA section 114(b), from recovering as costs those amounts which it has already received through insurance settlement agreements and/or through government contracts. Raytheon moves to strike the defense on the grounds that section 114(b) does not apply to insurance proceeds or amounts received through other contracts. In the second motion, Raytheon moves for partial summary judgment (doc. 287) on the United States' claimed setoff, contending that the insurance payments it received are a collateral source such that the United States is not permitted to offset the amounts received by Raytheon through insurance settlement agreements and, in any event, that the United States cannot raise genuine issues of fact concerning the amount of the settlement that can be properly allocated to removal costs at the Site. The remaining three motions concern discovery disputes over documents that the United States asserts are pertinent to the claimed setoff–the United States moves to compel government contract reimbursement information (doc. 298) and Raytheon, in turn, moves for a protective order (doc. 307) pertinent to the disclosure of competitive pricing information contained in one government contract sought by the United States; and the United States moves the court to review the magistrate judge's October 15, 2007 order denying insurance information (doc. 304).

As will be explained, Raytheon's motion to strike the affirmative defense is granted on the grounds that section 114(b) does not apply to the setoff sought by the United States, but the court nonetheless will consider insurance payments and other payments or credits received by Raytheon as an equitable allocation factor in calculating any judgment in this case. Raytheon's motion for partial summary judgment is denied based on the court's conclusion that the collateral

source rule does not apply in the context of CERCLA and the United States has come forward with sufficient evidence to permit the court to calculate the amount of the insurance proceeds to allocate to the Herington Site. Finally, the United States' motions concerning the discovery of insurance and government contract reimbursement information are granted in part and denied in part such that Raytheon is required to produce documents pertinent to the United States' claimed setoff and Raytheon's motion for a protective order is granted in its entirety.

*The United States' Affirmative Defense Number Seven*

Raytheon moves to strike the United States' seventh affirmative defense as set forth in its First Amended Answer:

> To the extent that Plaintiff has recovered or recovers any costs from another person or entity or from the United States under any contract or any statute other than CERCLA, Plaintiff is precluded by 42 U.S.C. § 9614(b) from receiving reimbursement for those costs from the United States under CERCLA.

This defense is undisputedly aimed at precluding Raytheon from recovering from the United States those amounts which it has already received from its insurers through insurance settlement agreements and/or through government contracts. According to Raytheon, the affirmative defense should be stricken on the grounds that section 114(b)–the statutory section upon which the defense is expressly based–simply does not apply to insurance payments or payments received through other contracts.

The court agrees that the setoff sought by the United States is not governed by section 114(b). That section provides as follows:

3

> Any person who receives compensation for removal costs or damages or claims pursuant to this chapter shall be precluded from recovering compensation for the same removal costs or damages or claims pursuant to any other State or Federal law. Any person who receives compensation for removal costs or damages or claims pursuant to any other Federal or State law shall be precluded from receiving compensation for the same removal costs or damages or claims as provided in this chapter.

42 U.S.C. § 9614(b). The court reads this statutory section as simply prohibiting a party from receiving the same recovery under both CERCLA and a comparable state statute–an interpretation that is supported by a litany of cases. *See, e.g.*, *Vine Street, LLC v. Keeling ex rel. Estate of Keeling*, 460 F. Supp. 2d 728, 757 (E.D. Tex. 2006) (section 114(b) makes clear that overlapping recovery under CERCLA and a comparable state provision is impermissible and recovery must be denied under one of the statutes); *New York v. Hickey's Carting, Inc.*, 380 F. Supp. 2d 108, 114-15 (E.D.N.Y. 2005) (section 114(b) comes into play when a party seeks the same costs under both federal and state law claims); *Blasland, Bouck & Lee, Inc. v. City of North Miami*, 96 F. Supp. 2d 1375, 1382-83 & n.9 (S.D. Fla. 2000) (where jury awarded full amount of costs on state claims, district court merely recognized party's entitlement to the "same damages" under CERCLA but did not duplicate the award in light of section 114(b)); *City of Merced v. Fields*, 997 F. Supp. 1326, 1336 (E.D. Cal. 1998) (section 114(b) prohibits double recovery of costs under both CERCLA and state law); *Kelley ex rel. State of Mich. v. John A. Biewer Co. of Schoolcraft, Inc.*, 1993 WL 186557, at *7 (W.D. Mich. May 21, 1993) (any amount of damages paid pursuant to a state judgment is not recoverable under CERCLA pursuant to section 114(b)). Because section 114(b) does not govern the United States' claimed setoff and that setoff as expressed in the United States' seventh affirmative defense is based

solely on section 114(b), the court grants the motion to strike the affirmative defense. *See* Fed. R. Civ. P. 12(f) (court may strike from any pleading an insufficient defense).

Nonetheless, irrespective of the applicability of section 114(b) or the assertion by the United States of a specific affirmative defense, insurance payments and other payments or credits constitute a significant allocation factor under CERCLA that the court is required to consider in its allocation determination. Thus, as will be explained below in connection with Raytheon's motion for partial summary judgment, the court, when it ultimately calculates the amount of the judgment in this case, will consider evidence of insurance settlement agreements and other payments or credits that Raytheon has received to reimburse it for its response costs. *See K.C.1986 Ltd. Partnership v. Reade Mfg.*, 472 F.3d 1009, 1017-18 (8th Cir. 2007) (where issue of settlement credits was raised prior to the entry of final judgment, the district court abused its discretion in failing to consider settlement credits when calculating the amount of the judgment; settlement credits "present a significant allocation factor" under CERCLA).

*Raytheon's Motion for Partial Summary Judgment*

In its motion for partial summary judgment, Raytheon contends that the insurance payments it received are a collateral source such that the United States is not permitted to offset the amounts received by Raytheon through insurance settlement agreements. The collateral source rule generally precludes a tortfeasor from obtaining the benefit of payments to the injured party from sources other than the tortfeasor. *See Sanjuan v. IBP, Inc.*, 160 F.3d 1291, 1299-1300 (10th Cir. 1998). Raytheon also contends, in the alternative, that the United States cannot raise

5

genuine issues of fact concerning the amount of the insurance payments that can be properly allocated to removal costs at the Site. The United States, in turn, maintains that the collateral source rule does not apply in the context of CERCLA and that it is able to come forward with facts sufficient to permit the court to calculate the amount of the insurance proceeds to allocate to the Herington Site. As will be explained, the court denies Raytheon's motion, concluding that the collateral source rule does not apply in this context and that the United States has come forward with evidence sufficient to permit an allocation of the insurance proceeds to removal costs at the Site.

Only one federal court has expressly considered the application of the collateral source rule to the CERCLA context and that court declined to apply the rule.[1] In *Vine Street, LLC v. Keeling ex rel. Keeling*, 460 F. Supp. 2d 728 (E.D. Tex. 2006), the Roosth Group and Genecov Group (composed of individuals and trusts related to the respective families) jointly owned a piece of property on which they constructed a building in 1961. *Id*. at 732-33. The Roosth and Genecov Groups then leased the property and the building to defendant Keeling for use as a laundromat and dry cleaners. *Id*. In 1996, the Roosth and Genecov Groups partitioned all their

---

[1] Raytheon alleges that a state court case, *County of Delaware v. J.P. Mascaro & Sons, Inc*., 830 A.2d 587 (Pa. Sup. Ct. 2003), has applied the collateral source rule in the context of a CERCLA action. That case, however, is not a CERCLA case but a contractual indemnification case where the County, pursuant to a contractual indemnification clause, sued the company that had transported the County's wastes to a CERCLA site for expenses it had incurred in settling a CERCLA action brought against it. *Id*. at 589-90. By way of a footnote, the court stated in dicta that payments the County had received from an insurance policy did not diminish the damages owed by the defendant under the indemnification clause. *Id*. at 594 n.2. Unlike this case, then, *County of Delaware* presented facts more akin to the tort context in which there was a "wronged plaintiff" and a defendant-wrongdoer.

6

jointly owned properties and ownership of the piece of property at issue was transferred to Steven Roosth. *Id*. at 733. Ultimately, it was determined that the defective design of certain coin-operated dry-cleaning machines housed in the facility in the 1960s caused pollutants to escape into the soil, contaminating the property and adjacent lots. *Id.* at 733-34. During this same time frame, Steven Roosth transferred the property to plaintiff Vine Street, a Texas Corporation owned by various members of the Roosth family. *Id*. at 732, 734. Vine Street filed CERCLA claims against the owner of the laundromat as well as various entities who had at one time or another exerted ownership over the company that had manufactured the defective laundry equipment, including Borg-Warner, the entity that owned the manufacturer during the period when the alleged activities occurred. *Id*. at 734. After a court trial on the merits of plaintiff's claims, the district court determined that only Borg-Warner was liable to plaintiff for the necessary response costs that plaintiff had incurred. *Id*. at 750, 757.

At trial, Borg-Warner presented evidence that plaintiff had been reimbursed for much of its response costs. *Id.* at 762. Specifically, the Roosth and Gencov Groups obtained insurance proceeds through a policy with Penn National that was in effect during the period when the contamination occurred and the Roosth and Genecov Groups, through their insurer, reimbursed Vine Street for certain response costs. *Id*. In addition, Genecov Group directly reimbursed Vine Street for certain uninsured out-of-pocket expenditures. *Id*. Borg-Warner argued to the district court that Vine Street should not recover its reimbursed response costs. *Id*. at 764. In response, Vine Street argued that the collateral source doctrine precluded the court from reducing Vine Street's recovery by what it had already been reimbursed. *Id*. at 765.

The district court rejected Vine Street's argument concerning the application of the collateral source rule. *Id.* at 766. In doing so, the court not only derived guidance from cases addressing the issue of double recovery more generally under CERCLA and from CERCLA provisions reflecting Congress's desire to prevent claimants from recovering the same response costs twice, but also flatly rejected the idea of borrowing from tort law the collateral source doctrine:

> [N]o court has ever applied the collateral source rule–a tort doctrine–in the context of CERCLA response-cost reimbursement. Because CERCLA is not a vehicle for general tort recovery and the Court has a broad duty to consider facts bearing on the proper equitable allocation of response costs, the monies Vine Street has already recovered are relevant.

*Id.* at 765. Raytheon urges that the "critical difference" between this case and *Vine Street* is that Vine Street recovered some of its response costs from other PRPs and not its insurers. Raytheon, however, has misconstrued the facts of *Vine Street*. There was no indication that the Roosth and Genecov Groups were potentially responsible parties and, in fact, Vine Street alleged to the district court that it had promised or was obligated to pay back the Roosth and Genecov Groups and/or Penn National for all reimbursements received such that recovering all response costs from Borg-Warner would not result in a double recovery in any event. Nonetheless, the district court held that Vine Street could not recover more than its unreimbursed response costs from Borg-Warner and that equity required the court to account for and deduct Vine Street's reimbursements from the amount that Borg-Warner was required to pay. *Id.* at 766. Raytheon, then, has not persuasively distinguished *Vine Street* from this case in any respect.

Moreover, other courts have held, without reference to the collateral source rule, that a

8

CERCLA judgment must be offset with settlement credits. In *K.C.1986 Ltd. Partnership v. Reade Manufacturing*, for example, the Eighth Circuit held that the district court in a CERCLA action abused its discretion in refusing to consider settlement credits when calculating the amount of the judgment. 472 F.3d 1009, 1016 (8th Cir. 2007). As explained by the Circuit, private party settlements are "relevant to the allocation determination" pursuant to "general equitable principles" and CERCLA "plainly requires that the district court take these settlements into its equitable consideration in the allocation process." *Id.* at 1017-18. The court further explained:

> In resolving contribution claims in general, CERCLA directs the court to 'allocate response costs among liable parties using such equitable factors as the court determines are appropriate.' [CERCLA] §9613(f)(1). In determining which equitable factors are appropriate, the policies articulated in CERCLA cannot be ignored. Importantly, CERCLA articulates a policy against double recovery. *See* 42 U.S.C. § 9614(b) (prohibiting duplicate recovery for the same removal costs). Crediting the amount of the settlements reached with private parties is necessary to avoid double recovery by one party.

*Id.* at 1017; *accord Boeing Co. v. Cascade Corp.*, 207 F.3d 1177, 1189-90 (9th Cir. 2000) (one equitable factor to consider in allocating response costs under CERCLA is "preventing someone from recovering for the same harm twice"; district court should have eliminated double reimbursement for the same expense in calculating judgment); *United States v. Davis*, 31 F. Supp. 2d 45, 64 (D.R.I. 1998) (there is "nothing equitable" about an allocation that permits a party to recover a portion of the costs for which it already has been compensated under the terms

9

of a settlement agreement).[2]

Raytheon offers no persuasive authority or reasoning for the court to reject the approach set forth in *Vine Street* (with respect to the collateral source rule specifically) and other cases (with respect to the issue of double recovery generally). In support of its contention that the court should apply the collateral source rule in this case, Raytheon relies in large part on *Town of East Troy v. Soo Line Railroad Co.*, 653 F.2d 1123 (7th Cir. 1980), a case in which, as described by Raytheon, the Seventh Circuit "applied the collateral source rule in an environmental matter." While Raytheon's description is accurate as far as it goes, a review of *East Troy* reveals a critical distinction between that case and this one. East Troy was a diversity case brought by the Town to recover its costs of remedying a pollution problem caused by the railroad's negligence and the case ultimately went to trial as a public nuisance action under Wisconsin state law. 653 F.2d at 1125-26. One of the issues on appeal was whether the Town's reimbursement of its costs through a HUD grant prevented the Town's full recovery from the defendant. *Id.* at 1132. Applying Wisconsin law, the Seventh Circuit readily concluded that Wisconsin, in the tort context, "prefers double recovery for a plaintiff to allowing defendant to avoid paying for the consequences of his or her wrongful acts" such that the Town was entitled to recover its full damages. *Id.* Because *East Troy* was not a CERCLA action and was, in fact,

---

[2]Raytheon suggests that these cases are distinguishable because they involved settlements with co-PRPs as opposed to a payment from the plaintiff's own insurer. There is no indication in the cases, however, that the source of the settlement payment was pertinent to the courts' decisions–it is the fact of the settlement payment that warrants consideration under CERCLA's equitable allocation scheme.

10

a tort case, it is entirely inopposite to this case in terms of the application of the collateral source rule.

Raytheon also highlights that the Tenth Circuit has applied principles of tort law to CERCLA litigation. However, the specific case cited by Raytheon simply references that section of the Restatement (Second) of Torts concerning the right of contribution among tortfeasors–a concept that already exists within the statutory framework of CERCLA itself. *See United States v. Colorado & Eastern R.R. Co.*, 50 F.3d 1530, 1536 (10th Cir. 1995) (citing Restatement (Second) Torts § 886A (1979)). The Circuit, then, was not borrowing a concept of tort law not previously recognized within the CERCLA context and nothing about the *Colorado & Eastern* case suggests that the Circuit would adopt the collateral source rule in a CERCLA action. This is particularly true in light of the Circuit's admonition that

> Congress did not intend for CERCLA, a narrowly drawn federal remedy, to make injured parties whole or to be a general vehicle for toxic tort actions. Unless Congress sees fit to provide such a remedy, full compensation for hazardous waste harms will in most instances remain the province of state law.

*County Line Investment Co. v. Tinney*, 933 F.2d 1508 (10th Cir. 1991) (quoting *Artesian Water Co. v. New Castle County*, 659 F. Supp. 1269, 1299-1300 (D. Del. 1987)); *accord Young v. United States*, 394 F.3d 858, 862 (10th Cir. 2005) ("CERCLA is not a general vehicle for toxic tort claims."). As the Circuit has recognized, then, there is a significant difference between an action for response costs under CERCLA and an action for damages in tort and that difference cautions against applying the collateral source rule in this case.

Raytheon also contends, in the alternative, that the United States cannot raise genuine

issues of fact concerning the amount of the insurance payments that can be properly allocated to removal costs at the Site. According to Raytheon, the settlement amounts it received from its insurers were not exclusively for response costs at the Herington Site; rather, Raytheon released its insurers from liability from all past, present and future environmental claims at any and all sites such that, according to Raytheon, it is impossible to accurately allocate any portion of the settlements to the Herington Site. Raytheon, then, contends that summary judgment in its favor is warranted on the United States' claimed setoff because it could never carry its burden of proof to show what portion of the total recoveries is allocable to cleanup costs related to the Site.

The court denies Raytheon's motion with respect to this issue. As discussed below in connection with the parties' discovery dispute concerning insurance information, the court is unable to ascertain at this juncture whether Raytheon has produced to the United States all the documents that might bear on the issue of allocating a portion of the insurance payments to removal costs at the Site. To the extent such documents do exist and the United States does not yet have those documents in its possession, summary judgment would be premature. Aside from that discovery dispute, however, the United States, in response to Raytheon's motion, has come forward with evidence, based on the documents presently possessed by the United States, sufficient to permit some allocation of the insurance proceeds to removal costs at the Site. Specifically, the United States' insurance claims expert, Gerald Harris,[3] avers that he has

---

[3] While Raytheon has previously filed a motion to strike the testimony of Mr. Harris, that motion pertains to issues within Mr. Harris's expert report that are unrelated to the issues presented in Mr. Harris's affidavit filed in support of the United States' response to Raytheon's motion for partial summary judgment.

12

reviewed the insurance information that Raytheon has produced thus far, including the pertinent policies, settlement agreements and certain settlement presentation material prepared by Raytheon's insurance recovery consultant, including spreadsheets outlining the available policies, policy limits and potential exposures for various Sites. While Mr. Harris avers that he could testify to a more precise allocated amount if provided additional documents, he avers that he is able to come up with a reasonable estimate of the dollar amount allocated to the Herington Site and he offers a specific dollar figure. Raytheon, in its reply, disputes Mr. Harris's methodology. Any deficiencies in Mr. Harris's analysis, however, are proper fodder for cross-examination; they are not a basis for the entry of summary judgment in favor of Raytheon. In short, the United States' evidence is sufficient to warrant a trial on the issue of whether and to what extent a portion of insurance payments may be allocated to the Herington Site.

*Disputes Concerning Insurance and Government Contract Reimbursement Information*

Finally, the court turns to two discovery disputes concerning documents that the United States contends are relevant to the claimed setoff. The first dispute is set forth in the United States' objection to and motion for review of the magistrate judge's October 15, 2007 order denying the United States' motion to compel insurance information. In its motion to compel, the United States sought various documents relating to the insurance proceeds obtained by Raytheon, including all communications and correspondence between Raytheon and its insurers, all claims notices, internal memoranda analyzing coverage, allocation data and all source documents utilized in connection with settlement presentations. The United States argued to the

magistrate judge that it was entitled to such information because (1) Raytheon's partial production disclosed that Raytheon had represented to its insurers that it bore a 95 percent share of the responsibility for the contamination at the Herington Site; and (2) the insurance proceeds should be applied to reduce the amount of the costs Raytheon is entitled to recover from the United States. Raytheon, in turn, objected on the grounds that (1) only one page of its prior voluminous production described Raytheon's PRP share as 95 percent and speculation that other documents might contain relevant admissions did not justify additional discovery; and (2) the collateral source rule rendered irrelevant additional discovery concerning insurance proceeds.[4]

In his October 5, 2007 order–an order that memorialized an oral ruling made at the final pretrial conference–the magistrate judge denied the United States' motion to compel on the grounds that Raytheon had already produced sufficient relevant insurance information under Rule 26(a)(1)(D) and that the United States' "speculation that the additional insurance documents sought from Plaintiff may contain relevant admissions does not justify the request to compel Plaintiff to produce documents beyond what Plaintiff has already produced."

The court sustains the United States' objection to the magistrate judge's order to the extent that order precludes the United States from obtaining documents pertinent to Raytheon's

---

[4]Raytheon also argued to the magistrate judge that it had exceeded the requirements of Federal Rule of Civil Procedure 26(a)(1)(D) and that no additional disclosures were required by that rule. But even if additional information is not subject to mandatory disclosure under that rule, "it is not the case that a document is not discoverable simply because it is not subject to mandatory disclosure." *See Fieldturf USA, Inc.v Speciality Surfaces Int'l, Inc.*, 2006 WL 3500902, at *2 (E.D. Va. Dec. 5, 2006). Rather, with respect to the issues in this case, the test for whether the United States is entitled to additional information is one of relevancy governed by Rule 26(b)(1). *See id.*

alleged admission that its PRP share at the Herington Site is 95 percent and/or that it is 95 percent responsible for the contamination at the Site. Raytheon contends that the figure is irrelevant to this litigation because the figure was used to estimate the exposure of Raytheon's insurers rather than to estimate Raytheon's equitable share of cleanup costs at the Site. But the United States is entitled to test Raytheon's explanation of the figure and, to do so, must have access to any documents concerning the basis for the 95 percent figure, including documents concerning the method or manner in which Raytheon calculated that figure and any documents bearing on Raytheon's assessment or estimation of its liability at the Site.[5] Thus, while the court agrees with Raytheon and the magistrate judge that the single alleged admission does not justify the broad, open-ended request made by the United States before the magistrate judge, the statement is sufficient to justify a more tailored request focused on documents relating to the basis for the figure, the method by which Raytheon calculated the figure and Raytheon's assessment of its liability at the Site.

The court also sustains the United States' objection to the magistrate judge's order to the extent that order precludes the United States from obtaining information pertinent to its claimed setoff. Before both the magistrate judge and this court, Raytheon objects to the production of such information on the grounds of the collateral source rule. The court, however, has concluded

---

[5]Although Raytheon, in its reply brief to its motion for partial summary judgment, objects to the United States' use of such documents on the grounds that the documents are privileged under Federal Rule of Evidence 408 (a point not pertinent to the motion for partial summary judgment as the court did not rely on the documents), Raytheon did not contend to the magistrate judge and does not contend in connection with the motion to review that such documents are protected from disclosure under Rule 408 or otherwise privileged.

15

that the collateral source rule does not apply to this case and that insurance proceeds present a significant equitable allocation factor in calculating any judgment in this case.[6] In light of these conclusions, Raytheon is required to produce to the United States, no later than Friday, December 14, 2007, all documents bearing on the United States' claimed setoff, including documents that bear on the issue of whether and to what extent Raytheon allocated the insurance payments to removal costs at the Herington Site.[7]

Finally, the court turns to the second discovery dispute related to the United States' claimed setoff as set forth in the United States' motion to compel government contract reimbursement information and Raytheon's motion for a protective order covering competitive pricing information contained in one government contract sought by the United States. By way of background, the magistrate judge, at the final pretrial conference, ordered Raytheon to produce the single government contract identified by Raytheon (the JPATS contract) pursuant to which Raytheon arguably had been reimbursed for a portion of its response costs at the Site. The pretrial order notes Raytheon's agreement to produce the contract subject to an appropriate protective order covering confidential pricing information contained in the contract and directs the United States to file a motion "if the matter is not resolved."

---

[6]The court recognizes, of course, that the magistrate judge did not have the benefit of the court's conclusions at the time he ruled on the motion to compel.

[7]In the context of its motion to compel, the United States had asked the magistrate judge to require Raytheon to produce a 30(b)(6) witness knowledgeable about insurance issues relevant to the case. The United States has not reiterated that request in connection with its objections to and motion to review the magistrate judge's order.

16

Unable to resolve the matter, the parties have each filed motions pertinent to this issue. The United States moves to compel "all relevant government contracts, contract-related direct or indirect overhead cost claims or calculations, audit reports and any other related government contract reimbursement information" on the grounds that such information is pertinent to the United States' claimed setoff. Raytheon, in response, agrees to produce the government contract referenced in the pretrial order (subject to a protective order) but contends that it should not be required to produce additional information because such information is irrelevant (citing, again, the collateral source rule and the inapplicability of section 114(b)). It is unclear from Raytheon's response whether additional government contracts exist or whether other documents of the nature sought by the United States (*e.g.*, overhead cost claims or calculations) exist.

With respect to the JPATS contract that Raytheon is prepared to produce, the only issue for the court's resolution is the appropriate terms of the protective order. The parties agree on those terms of the protective order relating to disclosure of confidential information to third parties, but disagree on the terms relating to disclosure among various agencies or departments of the United States. Specifically, there are three terms in dispute: (1) whether the United States can disclose the information to other agencies or departments of the United States "for any appropriate purpose" as argued by the United States or whether the United States may only disclose the information "for purposes of this litigation" as argued by Raytheon; (2) whether the United States must return all copies of the information upon termination of the litigation; and (3) whether the United States may use the confidential information in defensive filings with the court even if the court refuses to accept the filing under seal.

17

The United States argues that, in order to "fulfill its law enforcement mission," it must be able to share the information contained in the JPATS contract with other agencies and departments for consideration and potential use in other litigation even though the United States admittedly has no reason to believe the JPATS contract contains evidence of wrongdoing. Because of the United States' desire to review and share the information for potential use in other litigation, it refuses to agree to return all copies of the contract at the close of this litigation. Moreover, the United States urges that it must be permitted to file confidential information with the court even if the court refuses to accept such filings under seal.

The court grants Raytheon's motion for a protective order in its entirety and will enter the proposed protective order submitted as Exhibit B to Raytheon's reply in connection with the motion for a protective order. Absent a showing of wrongdoing or a specific issue contained in the contract that the United States desires to pursue for purposes unrelated to this litigation, the court will not permit the United States to share the confidential information with other agencies, branches or departments because the United States' interest in that regard simply does not outweigh Raytheon's interest in protecting from disclosure its competitive pricing information. Thus, if the United States has evidence of wrongdoing or a specific issue that arises from the JPATS contract that it wants to pursue, it may file an appropriate motion with the court for modification of the protective order. For this same reason, the court will require the United States to return to Raytheon all copies of the confidential information upon termination of this litigation, subject to further order of the court upon good cause shown by the United States. Finally, the court will not permit the United States to file in any pleading any documents

containing confidential information unless the court permits the filing of such information under seal. If, for whatever reason, leave to file under seal is denied by the court, then the court will hear argument from the parties as to whether the United States should be permitted to file the documents in any event.

With respect to the United States' request for additional government contract reimbursement information beyond the JPATS contract, the court's conclusion that it must consider evidence of credits that Raytheon has received through government contracts as an equitable allocation factor in connection with the calculation of any judgment requires Raytheon to produce any government contract reimbursement information that will assist the court in this regard. While Raytheon contends that the burden of providing additional information is "excessive" because it would be too difficult and time-consuming for Raytheon to calculate the exact amount it recovered on the contract given the complicated nature of the contract, the court is not requiring Raytheon to generate evidence in response to the United States' request. In other words, if documents pertinent to overhead cost calculations do not already exist, Raytheon is not required to generate calculations concerning the amount they recovered on the contract. The burden will be on the United States to provide evidence concerning that calculation. But Raytheon is required to produce to the United States, no later than Friday, December 14, 2007, any documents that will assist the United States in making that calculation, regardless of how timing consuming or difficult the task of calculating the figure might be.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiff Raytheon Aircraft

Company's motion to strike affirmative defense number seven of the first amended answer (doc. 238) is **granted**; Raytheon's motion for partial summary judgment (doc. 287) is **denied**; the United States motion to compel government contract reimbursement information (doc. 298) is **granted in part and denied in part**; the United States motion to review the magistrate judge's October 15, 2007 order denying insurance information (doc. 304) is **granted in part and denied in part**; and Raytheon's motion for a protective order (doc. 307) is **granted.**

**IT IS FURTHER ORDERED BY THE COURT THAT** Raytheon shall produce no later than Friday, December 14, 2007 the documents described herein.

**IT IS FURTHER ORDERED BY THE COURT THAT** the court will enter by separate order the proposed protective order attached as Exhibit B to Raytheon's reply to the United States' response to Raytheon's contested motion for a protective order.

**IT IS SO ORDERED.**

Dated this 5th day of December, 2007, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge