# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF KANSAS

**Raytheon Aircraft Company,**

   **Plaintiff,**

v.                **Case No. 05-2328-JWL**

**United States of America,**

   **Defendant.**

## MEMORANDUM AND ORDER

This is an environmental case filed under the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA), 42 U.S.C. § 9601 et seq., concerning contamination at the Tri-County Public Airport Site in Herington, Kansas.  Plaintiff Raytheon Aircraft Company alleges claims against the United States (based on the Army Corps of Engineers status as an alleged co-PRP at the Site) for cost recovery under section 107(a) of CERCLA and for contribution under sections 107(a) and 113(f) of CERCLA.  The United States alleges counterclaims against Raytheon for cost recovery under sections 107(a)(2) and 107(a)(4)(A) of CERCLA (based on costs incurred by the Environmental Protection Agency) and for contribution under section 113(f) of CERCLA.

Previously, Raytheon moved to strike the United States' counterclaim against Raytheon for cost recovery under section 107(a) on the grounds of untimeliness, undue delay and prejudice.  The court denied the motion, concluding that the statutory framework of CERCLA required that the United States' counterclaim be treated as if it were permissive such that the United States would be free to reassert the claim in a separate action in any event.  Raytheon

now moves the court to reconsider its memorandum and order denying the motion to strike (doc. 403). In support of its motion, Raytheon urges that the court's memorandum and order contains two errors of law and one error of fact, any one of which requires the court, upon reevaluation, to strike the United States' counterclaim. *See* D. Kan. R. 7.3(b) (reconsideration of non-dispositive order appropriate based on the need to correct clear error or where a court has misapprehended the facts).[1]

As explained below, the court denies the motion for reconsideration because it remains convinced that CERCLA supersedes Rule 13(a) under the unique facts presented here and that Congress, through specific CERCLA provisions, clearly evidenced an intent for the EPA to be able to bring a claim for cost recovery after the completion of cleanup activities and provided the EPA with broad discretion in determining when, after cleanup, to file its claim. Even if the court were convinced by Raytheon's arguments that the counterclaim should be deemed compulsory, the court would exercise its discretion and permit the United States to assert the claim at this juncture pursuant to Federal Rule of Civil Procedure 13(f). *See* Fed. R. Civ. P. 13(f) (when justice so requires, the court may permit a party to amend a pleading to add compulsory counterclaim). In the court's view, for the same reason it believes that the statutory framework created by Congress renders the United States' counterclaim permissive–Congress's intention to encourage expeditious cleanup efforts and to protect the execution of cleanup plans–the court

---

[1]While neither party disputes the application of Local Rule 7.3(b), the same standard for reconsideration would apply under Rule 59(e). *See Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

would conclude that justice requires that the United States be able to pursue a compulsory counterclaim at this juncture despite the late hour of the amendment and the possibility of prejudice to Raytheon.  Indeed, any prejudice to Raytheon was greatly alleviated by continuing the trial setting in this case to April 2008.[2]  Thus, the result in this case–that the United States is able to pursue its cost recovery counterclaim at this juncture–would be the same regardless of whether it were achieved as a matter of interpretation or as an exercise of discretion.

Finally, the court recognizes that an alternative approach suggested by Raytheon for the first time in its motion to reconsider (and thus previously not considered by the court)–that the United States' cost recovery counterclaim becomes "compulsory" upon issuance of the Notice of Completion–may indeed provide the more appropriate approach to this case.  Nonetheless, as explained below, even if the counterclaim were deemed "compulsory" upon issuance of a Notice of Completion, the United States would not have been required to file its counterclaim at that time.  Rather, Federal Rule of Civil Procedure 13(e) and Tenth Circuit case law interpreting Rule 13(e) reflect that, in such circumstances, the United States would have been entitled to file its claim for cost recovery in a separate action just as if it were a permissive claim.  Thus, even under Raytheon's newly articulated approach, the result in this case is, again, the same.

*Analysis*

---

[2]The court also offered a later trial setting but Raytheon expressed its desire for the earlier April setting.

In its motion, Raytheon asserts that the court's memorandum and order denying its motion to strike the United States' counterclaim contains two errors of law and one error of fact. Specifically, Raytheon contends that the court erred in finding a "legally significant" distinction between the "identity" of the United States as defendant in this matter (a co-PRP) and the United States as Counterclaim-Plaintiff (the EPA); that the court erred in concluding that the CERCLA statutory scheme specifically provides the EPA with broad discretion concerning the timing of bringing a cost recovery action against a PRP such that it supersedes the more general Federal Rule concerning compulsory counterclaims; and that the court misapprehended the facts by concluding that treating the counterclaim as compulsory would permit Raytheon to lift prematurely section 113(h)'s bar on pre-enforcement review and interfere with the EPA's cleanup efforts when, in fact, the "cleanup" pertinent to this case was complete nearly one year prior to the United States' assertion of its counterclaim such that the policies protected by section 113(h) are simply not implicated.  The court addresses each of these arguments in turn.

A.    The United States as Defendant and as Counterclaim-Plaintiff

Raytheon first contends that the court erred by finding a "legally" significant difference between the United States as a defendant in this case and the United States as counterclaim-plaintiff, suggesting that the court treated the United States as a separate legal entity from the EPA.  In support of its argument, Raytheon challenges one sentence of the court's memorandum and order:  "In this case . . . the United States is not asserting a counterclaim in its capacity as a co-PRP; it is asserting a counterclaim in its capacity as the EPA."  The court rejects the

4

argument, as the court, rather than drawing a legal distinction between the defendant and the counterclaim-plaintiff, was recognizing a key and distinguishing fact in this case–that the United States as defendant was acting on behalf of the Army Corps of Engineers (a co-PRP) and the United States as counterclaim-plaintiff was acting on behalf of the EPA (significantly, not a co-PRP). The fact that the United States as counterclaim-plaintiff was seeking to recover costs incurred not by a co-PRP but by the EPA was critical to the court's analysis of whether the counterclaim should be deemed permissive or compulsory. The court committed no error in recognizing the two different agencies represented by the United States and the distinct nature of the claims pursued by the United States on behalf of those agencies. *See, e.g., United States v. Power Engineering Co.*, 303 F.3d 1232 (10th Cir. 2002) (describing the United States as "acting on behalf of" the EPA).


B.      CERCLA Supersedes Rule 13(a) Under These Unique Facts

Next, Raytheon contends that the court erred in concluding that specific CERCLA provisions reflecting the EPA's wide discretion to determine the timing of filing a cost recovery action trump Rule 13(a), the more general Federal Rule governing compulsory counterclaims. As a threshold matter, Raytheon first asserts that the court's finding is erroneous because it was based not on the "plain language" of CERCLA but on the "intent" of Congress. In support of this argument, Raytheon directs the court to *United States ex rel. Boothe v. Sun Healthcare Group, Inc*., 496 F.3d 1169, 1176 (10th Cir. 2007), in which the Circuit, holding that district courts should assess subject matter jurisdiction over claims filed under the False Claims Act on

a claim-by-claim basis, stated that "[n]othing in [the statute's] plain language . . . moves us to think that Congress–which is presumed to legislate with the existing background rules of law in mind (perhaps especially including the federal rules, which it reviews before implementation)–meant to displace this practice."

Raytheon suggests that *Sun Healthcare*'s reference to a statute's "plain language" requires an express statement within CERCLA specifically abrogating Rule 13(a). The court, however, construes *Sun Healthcare* as simply restating prior Tenth Circuit law–that Congress can statutorily supersede the federal rules if "congressional intent to do so clearly appears." *United States v. Gustin-Bacon Div., Certainteed Prod. Corp*., 426 F.2d 539, 542 (10th Cir. 1970). Indeed, this court relied upon *Gustin-Bacon* in concluding in its prior memorandum and order that, based upon "the statutory language and legislative history of CERCLA," Congress "clearly intended" to give the EPA broad discretion to determine the timing of filing a claim for cost recovery. The Circuit, too, in *Sun Healthcare* cited *Gustin-Bacon* in support of its statement concerning whether Congress "meant" to displace the practice of assessing jurisdiction on a claim-by-claim basis. The court, then, rejects Raytheon's argument that the court's conclusion that CERCLA trumps Rule 13(a) (in the unique circumstances presented by this case) is erroneous because it is based on the intent of Congress.

Raytheon also urges that this court erred in relying on section 113(h) to support its conclusion that the EPA was not required to assert its cost recovery claim in response to Raytheon's complaint but was permitted (and, by statute, encouraged) to wait until the completion of cleanup at the Site before filing its counterclaim. According to Raytheon, the

6

court's reliance on section 113(h) is misplaced because that section does not apply to Raytheon's remaining claims in this case–claims for cost recovery and contribution.  *See* 42 U.S.C. § 9613(h)(1) (bar on pre-enforcement review does not apply to actions for cost recovery or for contribution).  The court, however, relied on section 113(h) not to suggest that the provision was pertinent to Raytheon's claims in this case but to demonstrate that the EPA, by statute, is encouraged to file a claim for cost recovery only after the completion of cleanup activities such that the EPA in this case was permitted to delay the filing of its claim and was not required to file its claim in response to Raytheon's complaint.[3]  Moreover, Raytheon's initial complaint did contain a claim that was subject to section 113(h) such that if the EPA had been required to file its cost recovery claim in response to Raytheon's complaint, the lifting of the bar on pre-enforcement review caused by the EPA's filing would have enabled Raytheon to pursue that claim and challenge ongoing removal activities in contravention of Congressional intent.

The court has considered and rejected Raytheon's remaining arguments suggesting that CERCLA does not preempt Rule 13(a) and reiterates its holding that, under the facts of this case, the EPA's cost recovery counterclaim is essentially one that is permissive.

_____

[3]Similarly, Raytheon criticizes the court's reliance on section 113(g)(2)–the provision concerning the statute of limitations for cost recovery claims–to support its conclusion that the EPA's counterclaim in this case must be deemed as it if were permissive.  Contrary to Raytheon's suggestion, the court did not conclude that section 113(g)(2) compelled the conclusion that the EPA's counterclaim in this case be deemed permissive; the court concluded only that the generous statute of limitations provided in section 113(g)(2) further reflected Congressional intent to provide the EPA with broad discretion in determining when to file a cost recovery action after the completion of cleanup activities.

C.      Cleanup at Site Completed Before Assertion of Cost Recovery Counterclaim

Finally, Raytheon challenges the following statement from the court's memorandum and order: "In this case, if the court were to treat EPA's cost-recovery counterclaim as compulsory to Raytheon's claims against the Army, then it would permit Raytheon to lift prematurely the bar on pre-enforcement review established by section 113(h) and it would allow Raytheon to dictate when the EPA had to bring an action for cost recovery regardless of whether cleanup was complete."   According to Raytheon, this statement reflects a misunderstanding of the facts because it is undisputed that the cleanup in this case was complete long before the United States asserted its counterclaim for cost recovery such that, in Raytheon's view, the policies underlying section 113(h) are not implicated and the court's reliance on section 113(h) was misplaced.

To begin, the court fully understood at the time of its memorandum and order that the cleanup in this case was complete in September 2006.[4]  This fact was implicit but obvious from the court's emphasis on the "presumption" of Congress that the EPA would not bring a cost recovery claim until after the completion of cleanup activities and the court's conclusion that the EPA in this case had acted well within its discretion and in accord with Congress's intent by delaying the filing of the counterclaim.

In any event, the fact that cleanup was complete before the EPA asserted its counterclaim does not render the court's reliance on section 113(h) misplaced.  Indeed, if the court were to

---

[4]Indeed, in May 2007, the court reinstated Count V of Raytheon's complaint based on the undisputed fact that cleanup at the Site was complete such that the jurisdictional bar of section 113(h) no longer existed.

8

treat the counterclaim as compulsory to Raytheon's claims, then the United States would have been required to assert that claim in its answer to Raytheon's complaint–a complaint that included a claim subject to section 113(h).  *See, e.g., Harbor Ins. Co. v. Continental Bank Corp*., 922 F.2d 357, 360 (7th Cir. 1990) (compulsory counterclaim is waived unless set forth in the answer to the complaint).  At that time, of course, cleanup was not yet complete; thus, treating the claim as compulsory would have forced the United States (assuming it did not wish to waive its claim) to assert its claim prior to the completion of removal activities and forced it to forfeit the jurisdictional bar of section 113(h) thereby permitting Raytheon to pursue its challenge to ongoing cleanup activities in contravention of Congressional intent.  Thus, as stated previously, treating the claim as compulsory would have permitted Raytheon to "lift prematurely the bar on pre-enforcement review established by section 113(h) and it would allow Raytheon to dictate when the EPA had to bring an action for cost recovery regardless of whether cleanup was complete."

For the first time, Raytheon now asserts that cost-recovery counterclaims should be deemed compulsory only upon completion of removal activities such that the United States would not have to file a cost recovery counterclaim until after the EPA issues a Notice of Completion.[5]  Under Raytheon's approach, then, the United States was not required to assert its counterclaim in response to Raytheon's complaint, but was required to file an amended answer at some point after cleanup completion.  The court need not address this argument as it was not

---

[5]While the United States in this case waited until the Notice of Completion was issued, Raytheon nonetheless complains that the 11-month delay in filing was too long.

only raised for the first time in the motion for reconsideration but also entirely contradicts the argument Raytheon made in its initial papers–that the United States was required to assert the claim no later than May 31, 2006 (the deadline for amending pleadings) at a time when cleanup was ongoing.

Nonetheless, it bears noting that Raytheon's argument would fail under the Tenth Circuit's interpretation of Federal Rule of Civil Procedure 13(e), which the court would find applicable to the approach suggested by Raytheon. Pursuant to Rule 13(e), a counterclaim "which either matured or was acquired by the pleader after serving a pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." Fed. R. Civ. P. 13(e). Rule 13(e), then, would encompass the United States' counterclaim as described by Raytheon; that is, in those cases where cleanup is ongoing at the time the PRP's claims for contribution and/or cost recovery are filed, the EPA's cost recovery counterclaim would mature only after the cleanup is complete and at some point after pleading. In such circumstances, the Tenth Circuit has held that the "after-acquired" compulsory claim may be raised as a separate claim in a later action just like a permissive counterclaim:

> Rule 13 clearly contemplates the situation of a compulsory counterclaim that is not yet mature at the time the responsive pleading is required but which later becomes mature during the pendency of the action: "A claim which either matured or was acquired by the pleader after serving his pleading may, with the permission of the court, be presented as a counterclaim by supplemental pleading." Rule 13(e). This language, however, indicates that while the defendant may with the court's permission amend his pleadings to include a counterclaim that has matured, the pleader is not required to do so. *See generally Harbor Ins. Co. v. Continental Bank Co.*, 922 F.2d 357, 360-61 (7th Cir.1990) (applying Fed. R. Civ. P. 13(e); noting that where court denies litigant permission to assert newly acquired counterclaim under Rule 13(e), litigant "can bring [that] claim as an

> independent lawsuit"); 6 *Federal Practice and Procedure* § 1428 (noting "Rule 13(e) is permissive in character. An after-acquired claim, even if it arises out of the transaction or occurrence that is the subject matter of the opposing party's claim, need not be pleaded supplementally; the after-acquired claim is not considered a compulsory counterclaim under Rule 13(a) and a failure to interpose it will not bar its assertion in a later suit.").  A defendant's failure to assert a permissive counterclaim will not preclude that party from instead raising it as a separate claim in a later action. *See Restatement (Second) of Judgments* § 22.

*Stone v. Department of Aviation*, 453 F.3d 1271, 1280-81 (10th Cir. 2006) (applying Colorado law which mirrors federal law).  In this case, at the time the United States filed its initial responsive pleading to Raytheon's claims, the Notice of Completion had not yet issued.  Under Raytheon's approach, then, the United States' counterclaim had not yet matured and so could not be considered a compulsory counterclaim in any event.  *See id.*  (individual's ADA claim had not matured at the time he filed his answer in City's state-court action against him because he had not yet obtained, nor was he entitled to demand, right-to-sue letter; ADA claim, then, was not a compulsory counterclaim and individual was free to assert that claim in independent federal action).  Thus, the court would reject Raytheon's contention that the United States was required to file its counterclaim upon the issuance of the Notice of Completion.  Under Rule 13(e), the United States would have been entitled to simply file its claim for cost recovery in a separate action–just as if it were a permissive claim.

In sum, the court rejects Raytheon's argument that the court's memorandum and order contains a factual error.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Raytheon's motion to

11

reconsider (doc. 403) this court's memorandum and order denying Raytheon's motion to strike Count II of the United States' Counterclaims is denied.

**IT IS SO ORDERED.**

Dated this 8th day of February, 2008, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge